### HEWLET v. FLINT.

Where the plaintiff sold a number of bales of drillings to A, for the purpose of making sacks, deliverable to A as fast as he needed them for manufacturing, and A agreed to store the sacks as fast as made, subject to plaintiff's order, with the privilege of retaking the sacks as he should make his payments: *Held*, that upon the delivery of the drills to A, the title thereto rested in him, and that plaintiff had no lien thereon, or on the sacks, until they were delivered to him.

APPEAL from the Superior Court of the City of San Francisco.

This was an action against Flint, the keeper of a warehouse in San Francisco, for the recovery of twenty-five bales of drilling, and damages for its detention. The plaintiff, under the contract set out in the opinion of the Court, gave C. L. North an order on Flint, the warehouseman, in whose warehouse the drills mentioned in the contract were stored, for fifty bales thereof. North took from Flint a warehouse receipt for twenty-five bales of drilling, and pledged the same to Wells, Fargo & Co. for a loan of one thousand five hundred dollars, who delivered up the receipt to North, and took one in their own name. The Court rendered judgment for defendant..

Plaintiff's motion for a new trial being denied, he appealed.

*McDougal, Aldrich and Sharp*, for Appellant.

*Halleck, Peachy & Billings*, for Respondent.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

The decision of this case will turn upon the meaning of the following contract:

"Sold to Mr. C. L. North, for account of Mr. J. C. Hewlet, (247) two hundred and forty-seven bales brown drills, as follows: price, (9¾) nine and three-quarter cents per yard; terms, payable fifteenth day of July next; said North to receive, from time to time, as he may want for manufacturing into bags, all the entire purchase, he (North) depositing the manufactured bags in a fire-proof warehouse to the order of said Hewlet, from day to day as they are manufactured, said North delivering the warehouse receipts to said Hewlet as he receives them, said North having

the privilege of drawing from warehouse the manufactured bags upon said Hewlet's order, as he may want, by making such payment as may be mutually agreed upon.   Said North to have the benefit of the present month's unexpired storage of the drills, after which month's storage said North is to pay for such storage as may accrue upon the said drills.   It is also understood the storage upon the manufactured bags shall be paid by the said North.

"Approved by both parties this (28) twenty-eighth day of April, 1856.

"HUNT & GRAY, Brokers, 91 Front street."

*After* delivery, and *before* payment of the purchase money, or storage of the sacks by North, in whom was the title of that portion of the property delivered vested, so as to make a sale valid to a *bona fide* purchaser ?   Could North have sold the sacks before storage, and the *bona fide* purchaser obtain a good title ?

It is clear from the agreement that it was a sale to North, not a mere hiring of North to make the sacks.   The sacks were not the property of plaintiff.   The goods were to be delivered to North from time to time as he needed them, and he was to store the sacks and deliver over the receipts to plaintiff.   These stipulations were intended to secure the plaintiff from incurring the risk of a delivery of all the goods at one time.   By delivering only a portion at a time, the plaintiff only incurred the risk of losing the portion delivered.   But it would seem to have been the intention of the parties that the title to the drills should vest in North, from time to time, as they were delivered.   When the material was made up into sacks, and the sacks stored and the receipts delivered, plaintiff would then have a lien upon the sacks.   Before the delivery of the bales, the property was in plaintiff, and any loss by accident would have fallen upon him. After delivery, the loss would have fallen upon North.   The plaintiff was willing to trust North for the portion of the goods first delivered, and then upon his pledging the sacks manufactured from that portion, he was willing to trust him for another portion.   That he was willing always to trust North personally for one portion of the goods, would seem clear from the fact that the first delivery to North was without security, while the other portions, by the terms of the contract, were only to be delivered upon a pledge of the sacks.   If, then, the plaintiff delivered the second portion without the performance of the conditions mentioned, he waived their performance, and the title vested in North in the same way as it would have done had these conditions been fully performed.   The view we take of the contract is this :   Upon the first delivery, the title of the portion delivered vested in North, and he could sell to any *bona fide* purchaser. And so in reference to any portion subsequently delivered.

When the sacks were made and stored, and the receipts of the warehouseman turned over to plaintiff, then his lien attached upon the sacks, but he never had any lien upon the unmanufactured materials.

The cases cited by counsel on both sides, have very little bearing upon the peculiar facts of this case. We have not found any case similar in its circumstances. The contract was framed with much skill for the just protection of both parties, but carried out with some carelessness on the part of plaintiff, and bad faith on the part of North. We can see no error in the decision of the Court below, and the judgment is, therefore, affirmed.