[S. F. No. 4980.  In Bank.—September 23, 1909.]

# J. S. POTTS DRUG COMPANY (a Corporation), Appellant, v. C. S. BENEDICT et al., Respondents.

EXECUTION OF INSTRUMENT BY CORPORATION—OFFICIAL SIGNATURES AND SEAL—PRIMA FACIE EVIDENCE OF AUTHORIZATION.—A written instrument purporting to be a lease by a corporation, which is signed by the proper officers and had the corporate seal attached, is *prima facie* evidence that it was executed under the proper authority.  The same is true of an instrument purporting to be an assent of the corporation to an assignment of the lease, which is so signed and sealed.

LANDLORD AND TENANT—COVENANT AGAINST ASSIGNMENT—BREACH OF COVENANT—ASSIGNMENT NOT VOID.—An assignment of a lease without the consent of the lessor, although a breach of a covenant not to assign without such consent, is not void, but passes the term, subject to the lessor's option to forfeit the lease on account of the breach of the covenant.

ID.—ESTATE FOR YEARS IS PERSONAL PROPERTY—ASSIGNMENT OF.—The estate of a lessee of land, being one for years, is not real property, but is a chattel real, and is to be regarded as a part of the personal estate of the lessee, and its assignment is governed generally by the rules applicable to the sale of personal property.

ID.—PRESENT TRANSFER OF LEASEHOLD INTEREST—PASSING OF TITLE—DELIVERY OF POSSESSION.—The title  of the lessee to the estate for years in the demised property passes to the assignee whenever the lessee and the assignee agree upon a present unconditional transfer of the leasehold interest.  A delivery of possession of the demised property is not essential to the consummation of the transfer or the consequent passing of title.

ID.—CONSTRUCTION OF WRITTEN ASSIGNMENT.—The question whether by certain written instruments, duly executed and delivered, the parties agreed upon a present unconditional transfer of a leasehold estate is to be determined by the terms of such instruments.

ID.—WORDS OF PRESENT TRANSFER—OCCUPANCY REMAINING IN ASSIGNOR—PAYMENT OF RENT—DELIVERY OF POSSESSION.—Where the actual words of assignment used show an unequivocal intention to effect a present transfer of the leasehold interest, and the *habendum* and *tenendum* clause show an equally unambiguous intent, the instrument of assignment will be construed as a present transfer of the leasehold interest, unless other portions of the instrument show a contrary intention.  Such a contrary intention is not shown by a *proviso* in the assignment which in no way refers to the leasehold interest assigned, but merely gives the assignor the right to remain in the occupancy of the demised premises for a limited period,

"pursuant to said lease, notwithstanding such assignment," and imposes on him the obligation of paying the rent for such time, and then delivering up the possession of the premises to the assignee.

ID.—DESTRUCTION OF DEMISED PREMISES BEFORE DELIVERY OF POSSESSION—OBLIGATION TO PAY PURCHASE PRICE—DELIVERY OF POSSESSION EXCUSED—CONDITION PRECEDENT.—Where the assignment operated as a present transfer of the leasehold interest, and by its terms the assignee agreed to pay the purchase price therefor on the future date on which the assignor undertook to deliver possession of the demised premises, the total destruction of such premises before the date for the delivery of possession without the fault of the assignor did not relieve the assignee of the obligation of paying the purchase price, even if it be assumed that the delivery of possession was a condition precedent to the payment of the purchase price. Under such circumstances, the performance by the assignor of the delivery of possession as a condition precedent to his right to recover the purchase price was excused.

ID.—COMPLETED SALE—RISK ACCOMPANIES THE TITLE.—In the absence of a special agreement to the contrary in a contract of sale, the risk accompanies the title, and when a present unconditional sale is actually consummated and the title has passed, the property is thenceforth at the risk of the buyer, so far as accidental destruction is concerned, even though possession thereof has not been delivered.

ID.—PLEADING COMPLETED SALE—EVIDENCE OF EXECUTION AND DELIVERY OF ASSIGNMENT.—The complaint in an action to recover the purchase price agreed to be paid for such leasehold interest, which alleges that on a certain date the "plaintiff sold, assigned and delivered" such interest, is sustained by evidence showing the execution and delivery by the plaintiff, on such date, and the acceptance by the defendant, of the assignment of the lease.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, F. H. Gould, and Richard P. Henshall, for Appellant.

Seth Mann, Bishop & Hoefler, and Alfred J. Harwood, for Respondents.

ANGELLOTTI, J.—This is an appeal by plaintiff from a judgment for defendants, given upon granting defendants'

motion for a nonsuit, and from an order denying its motion for a new trial.

The action was brought to recover the sum of fifteen thousand dollars, as a balance due from defendants, on account of the sale, assignment, and delivery by plaintiff to defendants of a certain lease.

The evidence showed the following facts:—

On April 17, 1906, plaintiff was the lessee of the premises numbered 815 Market Street, being a store and basement in the building, of the California Academy of Sciences (a corporation), under a lease executed to plaintiff by the owner of said building, said Academy of Sciences, in the year 1904, for the term of five years with the privilege of five more, at the rent of three hundred and fifty dollars a month for the first five years and four hundred dollars a month for the second five years. One of the terms of the lease was that there should be no transfer thereof except with the approval of the board of trustees of the lessor. Nothing further appears as to the terms of the lease. It had been executed in duplicate, and one copy was in the possession of plaintiff.

Plaintiff and defendants had apparently been negotiating for the sale by plaintiff to defendants of plaintiff's leasehold interest in these premises, and the necessary papers had been prepared. On the day named, April 17, 1906, defendant Scott came to the premises for the express purpose of closing up the transaction. He then had in his possession and produced these papers.

One of such papers was a formal assignment, bearing date April 12, 1906, and signed "J. S. Potts Drug Company, by J. S. Potts, President, by J. A. Logan, Secretary," with the seal of the corporation attached. It stated that the J. S. Potts Drug Company, for and in consideration of five dollars, and other valuable considerations to it passing and received "do by these presents, sell, convey, assign, transfer and set over unto the said C. S. Scott and C. S. Benedict a certain indenture of lease," describing the lease already referred to, "to have and to hold the same unto the said C. S. Scott and C. S. Benedict, their successors and assigns, from the 12th day of April, 1906, and for and during all the remainder yet to come of said term of said lease, to wit: ten (10) years from the 15th day of September, 1904; provided, however, that the

said J. S. Potts Drug Company may occupy said premises pursuant to said lease, notwithstanding said assignment, until June 15th, 1906, and shall in any event, pay the rent in said lease reserved to the lessor up to the said 15th day of June, 1906, and that at the said date the said J. S. Potts Drug Company will deliver up possession to the said C. S. Scott and C. S. Benedict, or their assigns, who will thereupon take possession and thereafter pay said rent."

Attached to this assignment was what purported to be the written consent of the California Academy of Sciences, bearing date April 17, 1906, signed by its president and secretary, with its seal attached. In this, it was stated that the Academy of Sciences "hereby gives its written consent to the foregoing assignment, and accepts C. S. Scott and C. S. Benedict, described in said assignment, as tenant and lessee under the said lease described in said assignment, in place and stead of the J. S. Potts Drug Company." It was further stated therein that said lease should be modified in several respects, in that Scott and Benedict may assign the lease to a bank, and that the premises may be used for banking, trust, safe deposit, or mercantile purposes, that Scott and Benedict may sublet the premises, or any part of such premises, that they make alterations in the premises to fit them for banking purposes, providing the same be done under the supervision and to the satisfaction of the lessor's agent, and that they may at any time before the termination of the lease remove certain fixtures.

There was also a memorandum of agreement reading as follows:—

"Memorandum of agreement, made this 12th day of April, 1906, between the J. S. Potts Drug Company, a corporation organized and existing under the laws of the state of California, the party of the first part, and C. S. Scott and C. S. Benedict, the parties of the second part;

"Witnesseth: That for and in consideration of a certain assignment of lease, this day executed by the party of the first part to the parties of the second part, the parties of the second part have paid to the party of the first part the sum of one thousand five hundred (1500) dollars, the receipt whereof is hereby acknowledged, and the parties of the second part hereby promise and agree to pay to the party of the first part, on the 15th day of July, 1906, the further sum of

fifteen thousand (15,000) dollars, and in consideration of the premises, the party of the first part agrees to pay the rent of said premises up to the 15th day of June, 1906, and to deliver possession thereof to the parties of the second part, or their assigns, on said 15th day of June, 1906.

"In witness whereof, the parties hereto have hereunto set their hands and seals, in duplicate, the day and year first above written, the party of the first part executing the same by its president and secretary, thereunto duly authorized.

> "J. S. POTTS DRUG CO.
> "J. S. POTTS, Pres.
> "J. A. LOGAN, Secty.
> "C. S. BENEDICT,
> "C. S. SCOTT."

The signatures to this paper were proved to be genuine, and there was attached the seal of the plaintiff corporation, the president and secretary of which had been duly authorized to execute both assignment and agreement.

The transaction was then and there completed between the parties, by Mr. Logan, secretary of plaintiff, acting for plaintiff, and Mr. Scott, acting for himself and Mr. Benedict. The papers already referred to were mutually examined by Mr. Logan and Mr. Scott, Mr. Scott gave to Mr. Logan a check for fifteen hundred dollars (which was subsequently cashed by plaintiff), Mr. Logan delivered to Mr. Scott the assignment, and also the duplicate of the agreement, retaining the original thereof, and, according to his evidence, also delivered to him the indenture of lease executed by the Academy of Sciences to the plaintiff.

On the next day, April 18, 1906, the demised premises were entirely destroyed by fire, the building of which they constituted a part being entirely destroyed, with the exception that some portion of the rear was left standing, and this portion was subsequently removed with the aid of dynamite. Actual possession of the premises by plaintiff was thus terminated, and defendants never went into actual occupancy. No part of the fifteen thousand dollars has ever been paid by defendants.

No point is made here in support of two of the grounds upon which the motion for nonsuit was based, and it is clear that neither finds any support in the record. The evidence

did make a *prima facie* case both on the question of the exe-
cution of the lease by the Academy of Sciences to plaintiff
and the consequent existence of the leasehold estate which was
the subject of the transaction, and on the question of the
assent of the lessor to the making of the assignment.   Each
instrument was signed by the proper officers and had the
seal of the corporation attached, and this afforded *prima facie*
evidence that they were executed under the proper authority.
(*Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 596, [99 Am.
Dec. 300] ; *Underhill* v. *Santa Barbara etc. Co.,* 93 Cal. 300,
314, [28 Pac. 1049] ; *Purser* v. *Eagle Lake etc. Co.,* 111 Cal.
139, 142, [43 Pac. 523].)   Nor would the assignment of the
lease have been void, if such consent had not been obtained
from the lessor.   "It seems to be the law that where there is
a clause in a lease that it shall not be assigned without the
previous consent of the lessor, and there is a breach of the
covenant not to assign, the lessor has only the option to forfeit
the lease for the breach of the condition, and that the assign-
ment is not void but passes the term, and the only remedy is
for breach of the covenant; and it has been held that the assign-
ment is voidable only at the option of the lessor or his repre-
sentatives." (*Garcia* v. *Gunn,* 119 Cal. 315, 319, [51 Pac. 684].)

The remaining grounds of the motion for nonsuit were:
1. That there was a fatal variance between the allegations in
the complaint and the proof, in that plaintiff alleged an
unconditional, completed, executed assignment of the lease,
while the proof showed that the sale or assignment of the
lease was a conditional one, uncompleted and unfulfilled; and,
2. That under the terms of the contract, the delivery of the
demised premises on June 15, 1906, was a condition precedent
to plaintiff's right to recover the fifteen thousand dollars.

Upon the facts stated, it appears plain to us that the trans-
action of April 17, 1906, was an absolute, unconditional con-
tract of sale of plaintiff's leasehold interest in the demised
premises, and that the title thereto then vested in defendants,
subject only to the right of plaintiff to occupy such premises
until June 15, 1906, if it so desired.   The subject of the trans-
action between the parties in this case was the estate of plain-
tiff in the demised premises created by the lease from the
Academy of Sciences to it.   (Jones on Landlord and Tenant,
sec. 436.)   Such estate, being one for years, was not real

property, but was a chattel real, and, under the law, must be regarded as having been part of the personal estate of plaintiff. "An assignment of a term for years is, therefore, governed generally by the rules applicable to the sale of personal property." (Jones on Landlord and Tenant, sec. 435; *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345, 353, [45 Pac. 680].) The important thing to bear in mind in this connection is that it was this *estate in the demised premises* that was being negotiated about, with a view to its sale by plaintiff to defendants. Our Civil Code provides that "the title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." (Sec. 1140.) There is nothing new or startling in this, it being in full accord with the settled law independent of statute. (Benjamin on Sales, sec. 3.) A delivery of possession of property sold is not essential to the consummation of the contract of sale and the consequent passing of title, in the case of a specific identified chattel (Benjamin on Sales, secs. 308, 315; *Tyson* v. *Wells,* 2 Cal. 122; 24 Am. & Eng. Ency. of Law, 2d ed., p. 1045) unless the parties by their contract have made such delivery essential. The question here is whether the parties agreed upon a present unconditional transfer of plaintiff's leasehold interest—its estate in the demised premises. Their intention in this regard is to be here ascertained from the written instruments duly executed and delivered. "The agreement is just what the parties intended to make it. If that intention is clearly and unequivocally manifested, *cadit quæstio."* (7 Benjamin on Sales, sec. 309.) In *Elgee Cotton Cases,* 22 Wall. 180, 187, it was said by the United States supreme court: "It must be admitted there is often great difficulty in determining whether a contract is itself a sale of personal property so as to pass the ownership to the vendee, or whether it is a sale on condition, to take effect or be consummated only when the condition shall be performed, or whether it is a mere agreement to sell. It is, doubtless, true that whether the property passes or not is dependent upon the intention of the parties to the contract, and that intention must be gathered from the language of the instrument." Defendants' position in this regard necessarily must be that the executed writings show that it was

intended by the parties that delivery of actual possession of the demised premises on or before June 15, 1906, should be a condition precedent to the consummation of the actual sale of the leasehold interest, and the consequent passing of title, or, as put by learned counsel for defendants, "that there was to be no transfer of the leasehold interest until the time specified for the delivery of possession." It seems impossible to us to find any such intention expressed in the writing.

It must be conceded that the actual words of assignment used show an intention to effect a present transfer of the leasehold interest as clearly and emphatically as any words the parties could have adopted. As we have seen, the language used in the assignment is that the plaintiff company "do by these presents, sell, convey, assign, transfer and set over unto the said C. S. Scott and C. S. Benedict, a certain indenture of lease," describing it and describing the premises thereby let.. The words "indenture of lease" must, of course, be taken as meaning the estate created by the lease referred to. It is true that the mere fact that words of assignment *in præsenti* are used is not necessarily conclusive on the question of consummated sale. The words "must be construed in connection with the rest of the contract, which must be taken as a whole, and such construction placed on it as the language used in the entire instrument calls for." (*Anderson* v. *Read*, 106 N. Y. 333, 344, [13 N. E. 292].) Notwithstanding the use of such words, therefore, it may appear that the idea of a present transfer is utterly inconsistent with other controlling features of the transaction evidenced by other provisions, in which event they will be construed in connection with such other provisions, as not importing a present transfer. (See *McLaughlin* v. *Piatti*, 27 Cal. 461, 462; *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 248]; *Anderson* v. *Read*, 106 N. Y. 333, 344, [13 N. E. 292].) But unless affected by other provisions, such language necessarily imports what it says, viz.: a present transfer. It is simply, as said in *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 248], "not conclusive" where other features of the transaction show that it cannot be taken as meaning a present transfer, or, as said in *Anderson* v. *Read*, where this is shown by "the whole of the language used in the contract and the circumstances of the transaction."

In the case at bar, the words importing a present transfer of the leasehold interest are followed, in the *habendum* and *tenendum* clause, by this language: "To have and to hold the same" (the leasehold interest in said premises under said lease) "unto the said C. S. Scott and C. S. Benedict, their successors and assigns, *from the 12th day of April, 1906, and for* and during all the remainder yet to come of said term of said lease mentioned therein, to wit: ten (10) years from the 15th day of September, 1904." (The italics are ours.) This confirms and emphasizes the previous words of present assignment of the leasehold interest, and negatives any theory of reservation by the assignor of any right of property as to any portion of the term. It states as clearly as it can be put in the English language that the assignees and their successors and assigns are to have and hold the assigned property from the twelfth day of April, 1906, "during all the remainder yet to come of said term."

We fail to find anything in the other language of either the assignment or memorandum of agreement, or in any of the circumstances of the transaction, that is necessarily inconsistent with the theory of a present transfer of the leasehold interest. The proviso in the assignment in no way refers to the property assigned, the leasehold interest, but is carefully confined by its terms to the mere occupancy of the demised premises for a limited period, the payment by the assignor of the rent for such time, and the subsequent delivery up of possession of such premises to the assignee. The proviso is: "Provided, however, that the said J. S. Potts Drug Company may occupy said premises pursuant to said lease, notwithstanding said assignment, until June 15th, 1906, and shall in any event pay the rent in said lease reserved to the lessor up to said 15th day of June, 1906, and that at said date the said J. S. Potts Drug Company will deliver up possession to the said C. S. Scott and C. S. Benedict, or their assigns who will thereupon take possession and thereafter pay said rent." Learned counsel for defendants say that "the *property* in the term of years could not pass to the defendants while the 'use and possession' were retained by the plaintiff," but we cannot perceive that this is so, or that there is any difference in this regard favorable to defendants' theory, between the case of the assignment of a leasehold interest, and the case of the sale of a

horse, in which latter case counsel say the vendor may retain the use and possession and the proprietary interest be vested in the vendee. In either case, the right to the use and possession of the thing sold is most important to the vendee who acquires the title, and if by the contract of the parties such right is retained by or given to the vendor for a considerable period of time, the value of the vendee's property may be much impaired, but he may, nevertheless, be the legal owner of the thing itself, even though the right to the possession is postponed for a time. It cannot be the law as to any kind of property that parties may not agree that the ownership of the property shall be in one, and that the right to the use and possession for a time shall be in another. In such a case, the legal owner simply holds the property subject to such right in the other party. The question in any such case is simply whether they have so agreed. Now, as we have said, the proviso in this regard is carefully limited to a mere right of occupancy of the demised premises for approximately two months, a matter not necessarily inconsistent with the theory of present transfer of the title to the leasehold estate. The fact that it is stipulated that plaintiff may occupy, "pursuant to said lease, notwithstanding such assignment" does not render the provision necessarily inconsistent with such theory. To the contrary, these words imply the understanding of the parties that the title to the leasehold is transferred, but that *notwithstanding such transfer* the grantor may continue to occupy the demised premises until June 15, 1906, in accord with the provisions of the lease as if no such transfer had been made. Whether this provision be a reservation, or, as claimed by plaintiff's counsel, a grant of a privilege by defendants to plaintiff, is immaterial in this connection. If a reservation, it was clearly intended only as a reservation of the mere right of occupancy of the demised premises for a limited time, and not as a reservation of the title to the estate for any portion of the term. Of course, there is nothing in conflict with the theory of present transfer in the fact that the assignor, retaining or being granted the privilege of occupancy to June 15th, agreed to pay the rent to that date, and, at the end of the stipulated time, to "deliver up possession" to the owners, who will thereupon enter into possession and thereafter pay the rent. We are satisfied that the language used by

the parties in this instrument is not reasonably susceptible of any other construction than that the parties intended to effect thereby a present transfer of the title to the leasehold interest, and there is nothing in the memorandum of agreement executed at the same time to indicate otherwise. It follows that by the execution and delivery of the assignment, defendants became the owners of such leasehold interest.

As we have stated heretofore, this is an action to recover the balance of the agreed purchase price of said leasehold interest. Learned counsel insist that even if there was a completed sale and passing of the title to defendants, plaintiff cannot recover, because the delivery of possession of the demised premises was made by the parties a condition precedent to the payment of this balance of the purchase price. We have already stated the language of the agreement in this behalf. While it is earnestly insisted by counsel for plaintiff that the provision for delivery of such possession was not a condition precedent to the payment of the price, but was a mere personal covenant on the part of plaintiff, it may be assumed for the purposes of this decision that it was such a condition precedent. So assuming, it must nevertheless be held that by reason of the destruction of the demised premises, without fault on the part of plaintiff, performance of this condition on its part was excused, and the money was payable. The general rule applicable is the one stated in the quotation from 9 Cyc. 631, contained in defendants' brief, as follows: "Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing to which it relates, the subsequent perishing of the person or thing will excuse the performance. Thus where the contract relates to the use or possession or any dealing with specific things in which the performance necessarily depends on the existence of the particular thing, the condition is implied by the law that the impossibility arising from the perishing or destruction of the thing, without default in the party, shall excuse the performance, because, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the subject of the contract." This rule is fully discussed in 7 Benjamin on Sales, sec. 570, and in 1 Beach on Modern Law of Contracts,, secs. 217, 234, and 237. The

cases cited by learned counsel for defendants are not in conflict with this rule, which appears to be universally accepted. It is based, as stated in the authorities, upon the proposition that in such cases a condition is implied that the impossibility arising from the perishing of the person or thing shall excuse the performance. Where, as was the case in *Wilmington etc. Co.* v. *O'Neil,* 98 Cal. 1, [32 Pac. 705], cited by counsel, the party has expressly agreed to pay to the owner the sum of thirty-five hundred dollars, in the event that a lighter rented to him is "lost" while in his possession and cannot be redelivered, and the loss occurs, and the owner sues to recover the thirty-five hundred dollars, it is obvious that the stipulation was not entered into on the basis of a continued existence of the lighter, and that the rule has no application. It does not apply, either, where performance of the contract is possible, "although the obligor himself may have become wholly unable to perform." (*Wilson* v. *Alcatraz etc. Co.,* 142 Cal. 182, 188, [75 Pac. 787].) "If a thing is possible in itself to be done—possible in the nature of things to be done—a positive contract to do it is binding, though some unforeseen contingency, accident or calamity may prevent its performance by the promissor." (American Note, 7 Benjamin on Sales, p. 598.) "The impossibility must consist in the nature of the thing to be done, and not in the inability of the party to do it." (*Wilson* v. *Alcatraz etc. Co.,* 142 Cal. 182, 188, [75 Pac. 787].) But absolute and inherent impossibility of performance, such as an impossibility caused by the destruction without fault on the part of the promisor of the thing to which the promise relates, is always an excuse where it is evident that the parties contracted on the basis of the continued existence of the thing. As applied to a stipulation for the mere delivery to the vendee of a specific article sold, the situation under this rule is clear. As stated in 7 Benjamin on Sales, sec. 570, quoting Blackburn, J., in *Taylor* v. *Caldwell,* 3 B. & S. 826, 32 L. J. Q. B. 164: "Where a contract of sale is made, amounting to a bargain and sale, transferring presently the property in specific chattels, which are to be delivered by the vendor at a future day, there, if the chattels without the fault of the vendor perish in the interval, the purchaser must pay the price, and the vendor is excused from performing his contract to deliver, which has thus become

impossible." The liability to pay the price in such a case notwithstanding failure to deliver possession, rests upon the fact that the purchaser was the owner of the property at the time of its destruction. It is elementary in the law of sales that, in the absence of special agreement to the contrary, the risk accompanies the title, and that when a present unconditional sale is actually consummated and the title has passed, the property is thenceforth at the risk of the buyer, so far as accidental destruction by fire, etc., is concerned, even though possession thereof has not been delivered. (See 7 Benjamin on Sales, sec, 308; *Tyson* v. *Wells*, 2 Cal. 122, 124; *Girdner* v. *Beswick*, 69 Cal. 112, 116, [10 Pac. 278]; 24 Am. & Eng. Ency. of Law, 2d ed., p. 1045, note; *Rail* v. *Little Falls etc. Co.*, 47 Minn. 422, [50 N. W. 471]; 1 Beach on Modern Law of Contract, sec. 207; 3 Page on Contracts, sec. 1370; 2 Meechem on Sales, sec. 1413.) Where there is a mere agreement to sell, and title therefore has not passed, the loss falls on the vendor for the same reason. In such a case the vendor is excused from the performance of his contract under the rule we have discussed by reason of the destruction of the thing, but he cannot retain money already paid on account of the proposed purchase, or recover moneys remaining unpaid. (See *Wells* v. *Calnan*, 107 Mass. 514, [9 Am. Rep. 65]; *Gould* v. *Murch*, 70 Me. 288, [35 Am. Rep. 325]; *Smith* v. *Phœnix Ins. Co.*, 91 Cal. 323, 331, [25 Am. St. Rep. 191, 27 Pac. 738].)

In the case at bar, it is too plain for discussion that the parties contracted for the delivery of possession of the demised premises on June 15, 1906, on the basis of the continued existence of such demised premises. Under the rule we have discussed, the plaintiff was excused from such delivery as a condition precedent to its right to recover the price agreed to be paid for the leasehold interest, the title to which had already passed to defendants at the time of the destruction of the demised premises. The case is doubtless a hard one on the facts, so far as defendants are concerned, if those facts are as shown by the evidence given on behalf of plaintiff. They are compelled to pay a large sum of money for property which was entirely destroyed, without having received any substantial benefit therefrom. It is, however, no harder on them that it would have been had there been no reservation of possession of the demised premises, and they had been given

actual possession thereof on April 17, 1906, nor is it harder on them than it would have been on the plaintiff had the sale not been consummated on that day. It is simply the case of an owner of valuable property being deprived thereof by reason of its destruction by fire.

In view of what we have said, it is apparent that there is no force in the contention that there was a fatal variance between the allegations of the complaint and the proof, in that plaintiff alleged an unconditional, completed, executed assignment of the lease, while the proof showed that the sale or assignment of the lease was a conditional one, uncompleted and unfulfilled. The point in this connection appears to be that no delivery of the property sold was shown, the complaint in the first count being in the form of a common count for goods sold and delivered, and in the second count alleging that on April 17, 1906, "plaintiff sold, assigned, and delivered," etc. As we have seen, the subject-matter of the assignment was the *leasehold interest, the estate for years.* This, we are satisfied, must be held to have been delivered to and accepted by defendants by the execution and delivery by plaintiff and the acceptance by defendants of the assignment of lease. (See Jones on Landlord and Tenant, sec. 438; *Canale* v. *Copello,* 137 Cal. 22, [69 Pac. 698].)

The judgment and order denying a new trial are reversed.

Sloss, J., Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.