[S. F. No. 7046.  In Bank.—October 18, 1917.]

## C. A. KIRTLEY, Respondent, v. JENNIE M. PERHAM et al., Appellants.

PLEADING—COUNTERCLAIM NOT CROSS-COMPLAINT.—A pleading by defendant setting up a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim is more accurately termed a counterclaim than a cross-complaint.

SALES—PERSONAL PROPERTY—DESTRUCTION BEFORE FULL PAYMENT OF PURCHASE PRICE—LIABILITY AS BETWEEN SELLER AND PURCHASER.—Where, under an agreement to sell personal property, possession is delivered to the purchaser but title retained in the seller until payment of the purchase price, the loss in case of destruction of the property without fault of either party falls on the seller.

ID.—RIGHT TO PURCHASE PRICE OF PROPERTY DESTROYED.—Upon an executory agreement of sale where title is retained in the vendor although possession is given to the buyer, the vendor, in case of the destruction or extinction of the subject matter without fault of either, cannot recover any balance of the purchase price remaining unpaid, and is liable to the buyer for the repayment of the portions of the price previously paid.

ID.—LIABILITY OF PURCHASER FOR PROFITS.—Although the purchaser is not liable to the vendor for the purchase price of property accidentally destroyed while title remains in the seller, he must account for profits made by him from the use of the property while in his possession under agreement for sale.

ID.—SALE OF NEWSPAPER ROUTE — SUSPENSION OF NEWSPAPER.—The foregoing rules applied in case of an executory agreement for the sale of a newspaper route, consisting of the right to sell and deliver a daily newspaper on certain streets, in a case where the newspaper discontinued publication before the arrival of the time for full payment of the purchase price.

APPEAL—HARMLESS ERROR.—A technical but unprejudicial variance is not cause for a reversal of a judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Marcel E. Cerf, Judge.

A. A. Sanderson, and tum Suden & tum Suden, for Appellants.

Samuel M. Shortridge, Wm. M. Abbott, and Wm. M. Cannon, *Amici Curiae.*

O'Connor & Schwartz, for Respondent.

SHAW, J.—The defendants appeal from the judgment, upon the judgment-roll alone.

The complaint, as a cause of action against the defendants, alleges that they are jointly indebted to the plaintiff in the sum of $4,599.38, for money jointly had and received by the defendants, to and for the use of the plaintiff, and that said sum of money remains unpaid.

The defendants, in addition to the answer denying the indebtedness alleged in the complaint, filed a pleading which they denominate a cross-complaint, but which, more accurately speaking, is a counterclaim, it being a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim. (Code Civ. Proc., sec. 438.) The main questions presented for decision arise upon the facts set forth in the cross-complaint and the findings of the court thereon.

The money had and received by defendants for which the plaintiff sues was money paid by plaintiff to defendants as part of the price of certain personal property sold by the defendants to the plaintiff in accordance with the terms of a written agreement between them. His claim is that while he was in possession of the property under the agreement of sale, but before the price became due, and before he received title to the property sold to him, the property itself, without his fault, ceased to exist, and that as a consequence he was relieved from the obligation to pay the remainder of the price and became entitled to recover from the defendants the money he had paid thereon, less the profits he had realized from the property during the time he had the possession and use thereof.

The defendants in their counterclaim allege a cause of action for the recovery of the part of the purchase price of the

property which had not been paid to them by the plaintiff. They proceed upon the theory that in the case of a sale of personal property upon an agreement whereby the possession is delivered to the buyer before the price is to be paid, the fact that the property sold is lost, destroyed, or ceases to exist, without fault on their part, before payment is due, does not excuse the buyer from his promise to pay the entire price agreed upon, although the title in the meantime is, by the terms of the contract, to remain in the seller. They also contend that in the present case the title as well as the possession was transferred to the buyer at the time of the execution of the agreement.

The court below held with the plaintiff upon these propositions, refused any relief upon the counterclaim of the defendants, and gave judgment for the plaintiff for the sums he had paid upon the price, less the profits realized, as above stated.

Mr. Williston, in his treatise on Sales, says that where goods sold are delivered to the buyer, but title is retained by the seller until the price is paid, inasmuch as the buyer has the immediate use of the goods, he must stand the loss from subsequent ordinary deteriorations, and that ''it seems properly to follow that if the goods are accidentally destroyed or injured, the buyer must stand the loss; that is, he must pay the price in full at the time agreed. The decisions upon the point are in conflict, but the weight of authority sustains the view here expressed.'' (Williston on Sales, sec. 304.) The defendants rely on this doctrine.

We need not review the authorities said to be in conflict, or examine into the merits of the diverse arguments therein. In this state the question is settled in favor of the plaintiff and in accordance with the decision of the court below. Discussing the case of a sale of personal property to be delivered in the future, where the property, without fault of the vendor, has perished in the interval, the court in *Potts* v. *Benedict*, 156 Cal. 334, [25 L. R. A. (N. S.) 609, 104 Pac. 432], says: ''The liability to pay the price in such a case, notwithstanding failure to deliver possession, rests upon the fact that the purchaser was the owner of the property at the time of its destruction. It is elementary in the law of sales that, in the absence of special agreement to the contrary, the risk accompanies the title, and that when a present unconditional

sale is actually consummated, and the title has passed, the property is thenceforth at the risk of the buyer, so far as accidental destruction by fire, etc., is concerned, even though possession thereof has not been delivered." (Citing cases.) "Where there is a mere agreement to sell, and title, therefore, has not passed, the loss falls on the vendor for the same reason. In such case the vendor is excused from the performance of his contract under the rule we have discussed, by reason of the destruction of the thing, but he cannot retain money already paid on account of the proposed purchase, or recover monies remaining unpaid." The decisions in *Smith* v. *Phoenix Ins. Co.,* 91 Cal. 323, [25 Am. St. Rep. 191, 13 L. R. A. 475, 27 Pac. 738], *Tyson* v. *Wells,* 2 Cal. 122, *Hewlet* v. *Flint,* 7 Cal. 265, *Girdner* v. *Beswick,* 69 Cal. 118, [10 Pac. 278], *Conlin* v. *Osborn,* 161 Cal. 666, [120 Pac. 755], *Peatland* v. *Edwards,* 23 Cal. App. 405, [138 Pac. 257], and *Waltz* v. *Silveria,* 25 Cal. App. 719, [145 Pac. 169], are to the same effect. The text-books state the same rule. (35 Cyc. 343; 24 Am. & Eng. Ency. of Law, 1045; 2 Mechem on Sales, sec. 1413; 3 Page on Contracts, sec. 1370.) And Mr. Williston himself in section 301 states the general rule to be that the loss in such cases falls on him who has the title at the time. And in section 164, on the same subject, he says: "If the property is destroyed or injured before the time when it was agreed the title should pass, the buyer cannot be compelled to pay the price, and if he has paid the price in advance it may be recovered."

It is not disputed in this case that the property sold under the agreement, with the exception of an unimportant portion thereof which the court finds had no substantial value, ceased to exist about two years after the execution of the agreement, without fault of either party. The property, as described in the record, consisted of the right to deliver a morning newspaper published in San Francisco, known as the "San Francisco Call," to subscribers residing upon certain streets in San Francisco. The right, as described in the agreement, was either a permanent right or one which was to continue to exist for an indefinite period in the future. Nothing was said therein, or anywhere in the record, as to the term of its continuance. The agreement is dated August 31, 1911, and according to the record it was executed and delivered about September 21, 1911. The publication of the "San Francisco

Call" was permanently discontinued on September 1, 1913, and thereupon the right to deliver the same to subscribers, which was the subject of the agreement of sale, necessarily ceased to have any value whatever, and in fact ceased to exist. Publication of the paper has never been resumed.

From the principles above stated, as established by our decisions, it follows that if we assume that the title to this right remained in the sellers, by virtue of the terms of the agreement, at the time such publication was discontinued, the loss must fall upon the defendants, and the plaintiff was entitled to recover the sum which he had already paid on the price thereof. It is necessary, therefore, to determine the effect of the agreement with respect to the transfer of title and the time when the same was to pass to the buyer.

The agreement declares that "this contract of sale and the sale of said property herein provided for, and the terms and conditions hereof, are made subject to the approval and confirmation of the superior court of the city and county of San Francisco, state of California, wherein the estate of said Abbie L. Randall, deceased, and the guardianship of said Laurence George Randall, said minor, are pending." It shows that Perham entered into the agreement as the executor of the estate of Abbie L. Randall, deceased, and as guardian of Laurence George Randall, a minor, and that the defendant, William Edgar Randall, executed it in his own behalf. The agreement of sale was confirmed by the superior court for Perham, as executor, on September 14, 1911, and for Perham, as guardian, on September 21, 1911, and thereupon it became effective as of its date.

It states that the vendors, for the sum of eight thousand dollars, to be paid to them by said C. A. Kirtley, "hereby promise and agree to sell" to Kirtley, and that Kirtley "hereby agrees to purchase from" the vendors, the property described. It recites that two thousand five hundred dollars was paid in cash on the price, and it provides that Kirtley should have three years from the date of the agreement within which to pay the balance, with the privilege of paying thereon, at any time or times, sums of one hundred dollars or more; that if he failed to pay the full price, or in other particulars failed to perform his covenants in the agreement expressed, the amount paid by him should be forfeited, and the agreement should thereupon become null and void; that

CLXXVI Cal.—22

upon the fulfillment by him of his covenants, and the payment by him of the full price, the vendors agree to execute to Kirtley a proper bill of sale, conveying to him "all the right, title, and interest" of the vendors, "in and to the delivery and service of said newspapers." It further provides that "the possession of said newspaper route and routes, and each of them, shall be, and each of them is hereby, placed with" said Kirtley, and that during the life of the contract and agreement, the delivery and service of said "Call" newspaper over said routes should be made by Kirtley in compliance with the rules and regulations regarding the same, promulgated and demanded by said newspaper, and that Kirtley should collect the moneys due from subscribers, and pay to the newspaper proprietors all thereof properly due and receivable by them out of said collections. The contract also included the right to serve and deliver, within the territory prescribed, another newspaper known as the "California Demokrat." This newspaper has not ceased publication, but the court found that the right to deliver the same formed no material part of the consideration of the plaintiff's purchase, and that the plaintiff was willing to restore that right to the vendors or their successors in interest. It appears that before the beginning of the action the plaintiff offered to restore the same to the vendors and demanded a rescission.

From these provisions of the agreement it is clear that it constituted nothing more than an executory agreement to sell to Kirtley the property described therein, and that the title thereto was to remain in the vendors until Kirtley had paid the full price fixed for the property, and had in the meantime performed all the other covenants of the agreement to be performed by him, and that only upon such performance was the title to be transferred to him. The fact that the agreement declares that it was entered into subject to confirmation by the superior court does not alter its character. The effect of that provision was that it did not become an effective agreement until such confirmation was procured, and the result was that when the proposed agreement was confirmed, it took effect as an executory agreement only, and that by virtue of its terms, it related back to its date for the purpose of fixing the time of the inception of the right of possession by Kirtley and the time for the payment of the price. The

agreement constitutes an executory contract of sale to be completed and executed by a final transfer upon payment of the price. The delivery of possession of the property to Kirtley, that is to say, the turning over to him of the duty of delivering the newspapers and collecting the subscriptions, did not transform the transaction into a completed sale. It is a well-settled proposition that an agreement of sale may transfer the right of possession to the vendee without transferring to him the title. Such was the effect of this agreement. The case, therefore, comes within the rule stated in *Potts* v. *Benedict*, 156 Cal. 334, [25 L. R. A. (N. S.) 609, 104 Pac. 432], that upon an executory agreement of sale, where title is retained in the vendor, although possession is given to the buyer, the loss entailed by the destruction or extinction of the subject matter, without fault by either party, falls upon the vendor, and that he cannot recover any balance of the purchase price remaining unpaid, and is liable to the buyer for the repayment of the portions of the price previously paid. The authorities, so far as we are advised, do not declare that the buyer in such a case, if he has received possession of the property, can keep the profits received by him prior to its destruction or extinction, where he seeks recovery of advances on the price, and we think equity and justice demand that he should account to the vendor therefor. The court below, therefore, properly deducted the profits from the amounts paid by Kirtley upon the price.

It is suggested that as there was no warranty that the publication of the "Call" should continue, and as neither party could foresee its discontinuance, the rule stated in *Potts* v. *Benedict* should not apply. There is no force in this argument. In the case of the sale of a horse there may be no warranty as to its length of life, and no one could foresee the time of its death, yet the rule that the loss follows the title applies to such sales. (*Girdner* v. *Beswick*, 69 Cal. 118, [10 Pac. 278].) No distinction of this character can be made.

Defendants invoke the rule stated in Pomeroy's Equity Jurisprudence (section 855), quoted and approved in *Colton* v. *Stanford*, 82 Cal. 388, [16 Am. St. Rep. 137, 23 Pac. 16], that where parties knowingly enter into a speculative contract—one in which they intentionally speculate as to the result—"they are supposed to calculate the chances, and they certainly assume the risks," where there is no actual or con-

structive fraud, and neither party can obtain relief if, without his fault, the facts upon which the agreement is founded "turn out very different from what was expected or anticipated." This doctrine does not apply to cases of sales of personal property made under the circumstances shown in the present case. There was nothing more in the nature of a speculation as to the result, or as to the continuance of the publication of the "Call," exhibited in the record, than there is in any other case of the sale of property which may die, perish, or become extinct.

Since the filing of the closing brief of the appellant, prior to the first submission of the cause, a number of additional briefs have been filed by the attorneys for the parties and by attorneys appearing *amici curiae* in behalf of other parties who claim to be interested in the questions involved. In these briefs it is contended that the subject matter of the sale was nothing more than a personal agency for the delivery of newspapers for the publishers thereof, which was either not transferable or, if it could be transferred, that the transfer was complete when the publishers of the "Call" accepted Kirtley as such agent, and allowed him to perform the required service. There is nothing in the record to show how or from whom the plaintiffs acquired the property which the agreement purports to sell. It is there termed "property" and it is described as "all those two certain 'San Francisco Call' newspaper routes for the delivery and service of said newspaper" along the streets specified, including also the right to serve and deliver said "Demokrat" over said routes. It is certainly a legal possibility that the vendors could have possessed an unqualified and unconditional right to serve and deliver said newspapers along those streets for a definite term of years extending beyond the duration of this agreement of sale, under a contract which the publishers could not revoke, except for good cause. Such a right is assignable. There is nothing to the contrary in the agreement of sale or in the record. Hence, in aid of the judgment we must presume that the right sold was of that character.

It is further claimed that there is a fatal variance between the allegations of the complaint and the findings and judgment. That there is a variance must be conceded. The complaint charged that the defendants jointly received the money sued for, and prayed judgment against Perham in two dis-

tinct capacities, first as trustee under the will of Abbie L.
Randall, deceased, for William Edgar Randall and Laurence
George Randall, and second, as guardian of Laurence George
Randall, and also against William Edgar Randall individ-
ually. The judgment follows the conclusions of law and is
for $1,199.96, against Perham as trustee under the will of
Abbie L. Randall and Laurence George Randall, jointly; for
$1,199.96 against Laurence George Randall alone, and for
$2,399.92 against William Edgar Randall.

The explanation is as follows: At the time the agreement
of sale was made, a one-half interest in the property sold be-
longed to the estate of Abbie L. Randall, a one-fourth in-
terest to Laurence George Randall, a minor, and one-fourth
to William Edgar Randall, an adult, and Perham was execu-
tor of said estate and guardian of Laurence. · The money
paid on the price was of course held in the same proportions.
The agreement purports to be a joint agreement of sale by
all the interested parties and it does not state whether their
ownership is joint or several. Their ownership was in fact
a common ownership, the interests being as above stated.
The three parties interested as vendors each were to receive
the benefit of a like interest or share in the money paid on
the price, and, under section 1659 of the Civil Code, the im-
plied promise to repay it, upon which the complaint is based,
must be deemed to be joint and several. It was therefore
permissible to sue them jointly. Before the action was begun
the one-half interest in the property belonging to the estate of
Abbie L. Randall, presumably including this money, was dis-
tributed to Perham, as trustee for the benefit of said William
and Laurence, who were sons of said decedent, and the one-
half thereof due to William, being a one-fourth interest in
the proceeds of the property sold, had been delivered over to
William by said trustee. At the time of the trial and judg-
ment, therefore, William held a one-half interest in the money
sued for, Laurence held a one-fourth interest therein, and the
other one-fourth was held by Perham as trustee for the use
and benefit of Laurence. The total sum found due to plain-
tiff being $4,799.80, the court divided it according to the re-
spective interests, and gave judgment against each defendant
for his proportion thereof.

While this may be a technical variance, so far as the mere
form of words is concerned, it is not fatal. It was clearly

within the power of the court to give such judgment under the provisions of sections 578, 579, and 580 of the Code of Civil Procedure, and as it was in accordance with the facts, and beneficial, rather than prejudicial, to the defendants, it does not constitute a cause for a reversal of the judgment. (Const., art. VI, sec. 4½.)   It would perhaps have been more correct to have provided in the judgment that so far as the judgment was against Perham, it was payable only out of the assets in his hands as trustee for Laurence.   But this point is not suggested and it is to be supposed that it was not considered of any importance.   We find no error in the record of sufficient consequence to warrant a reversal.

The judgment is affirmed.

Sloss, J., Melvin, J., Henshaw, J., and Lawlor, J., concurred.

Rehearing denied.