[Civ. No. 5936. First Appellate District, Division Two.—September 27, 1927.]

A. J. OLIVER, Trustee in Bankruptcy, etc., Respondent, v. SANTA MARIA GAS COMPANY (a Corporation), Appellant.

Chickering & Gregory and Griffith & Thornburgh for Appellant.

Keyes & Erskine and Heaney, Price & Postel for Respondent.

WARNE, J., *pro tem.*—This is an appeal by defendant from a judgment in favor of plaintiff in a suit for the conversion of 51,426.3 feet of 8-inch pipe and 500 thread protectors brought by A. J. Oliver, as trustee in bankruptcy for the partnership consisting of H. L. Emerson and R. K. Howk. The trial of the action took place before the court sitting without a jury, and resulted in findings of fact that the defendant had converted 46,333˙ feet of this pipe and the 500 thread protectors; that the value of the pipe was found to be $33,598.96, and that the value of the thread protectors $60. Judgment was entered accordingly.

For some time prior to February 11, 1920, the Midland Counties Public Service Corporation had been the owner of a certain pipe-line extending from the oil fields in Santa Barbara County to the plant of the Union Oil Company at Avila in San Luis Obispo County. This pipe-line was known as the Graciosa pipe-line. It in turn connected with a 4-inch pipe-line leading to the plant of the Midland Counties Public Service Corporation in the city of San Luis Obispo.

The Graciosa pipe-line had been laid in 1906 over rights of way granted to one Adolph Phillips and was originally used to transport oil from the Graciosa oil lease in Santa Barbara County to an oil refinery located at Oilport in San Luis Obispo County. By mesne conveyance the Midland Counties Public Service Corporation had become the successor in interest to Adolph Phillips and had used the line for the conveying of gas from the oil fields to its properties in the city of San Luis Obispo and in serving consumers in proximity to the line.

Prior to February 11, 1920, the Midland Counties Public Service Corporation had contracted to sell certain of its properties, including the Graciosa pipe-line, to the Santa Maria Gas and Power Company. On February 11, 1920,

and at a time before the Railroad Commission had approved the transfer of these properties, the Santa Maria Gas and Power Company (the predecessor in interest of the appellant) entered into a contract with H. L. Emerson, who was acting for the partnership of H. L. Emerson and R. K. Howk. The portion of the contract under consideration provides as follows:

"(1) The seller agrees, upon the acquisition of said pipe line by itself or its said successor and subject to the approval of the Railroad Commission of the State of California of the abandonment of said line, to sell the same to the buyer and the buyer agrees to purchase the same from the seller or its said successor for the sum of one hundred eight thousand (108,000) dollars, payment of said sum to be made as follows, to-wit: within fifteen (15) days after the approval of the Railroad Commission of the State of California of the abandonment of said line, the buyer shall pay to the seller the sum of twenty-five hundred (2,500) dollars and within thirty (30) days thereafter, and in any event before commencing the work of removing said line, the additional sum of five thousand (5,000) dollars; said deposit of seventy-five hundred (7,500) dollars shall apply on the last shipment of pipe as removed. The balance of the purchase price shall be paid by the buyer to the seller at the rate of ninety (90) cents per foot as pipe is loaded on cars at the depot at such railroad shipping point as may be selected for shipment and shall be paid before shipment is made.

"(2) The seller also agrees to sell, subject to its acquisition under said contract of December 15, 1919, and to the approval of the Railroad Commission of the State of California of said contract and of the abandonment of the same, 44,000 to 46,000 feet of four-inch pipe line extending from the eight-inch pipe line above described at a point near the old Graciosa Oil Company's refinery, sometimes known as Oilport, to the city limits of San Luis Obispo, which said four-inch pipe line the buyer agrees to buy, the purchase price thereof to be the sum of thirty-five (35) cents per foot, payable as and when the same is loaded on cars at the railroad depot from which the same is to be shipped and before the same shall have been shipped; provided that there shall be excluded herefrom such portion

of said four-inch line as seller may decide to use in the conduct of its gas business.

"(3) All of said pipe shall be taken and paid for in any event on or before July 1, 1920, except that seller agrees to allow buyer such reasonable additional time to take and remove not exceeding ten thousand (10,000) feet of said eight-inch line, about forty-six hundred (4,600) feet of which is in the bed of the Santa Maria River.

"(4) The seller agrees to seek the approval of the Railroad Commission of the State of California with all reasonable speed and to use its best efforts to obtain the same.

"(5) The seller agrees to obtain for the buyer the right to go on the lands through which said pipe lines pass for the purpose of removing the same and to assume responsibility for damage to crops and land reasonably occasioned by the seller in removing said pipe lines, but in this connection the buyer agrees to use every endeavor to cause as little damage as possible to crops and fences on the lands through which said pipe line runs and to put said lands as nearly as possible in the same state as they were prior to starting removal after said pipe has been removed.

"(6) Recognizing that it is contemplated by buyer that he may sell said pipe lines in place the purchase price thereof from buyer to seller is hereby made payable, in case said pipe lines be sold by buyer to some third party in place as soon as buyer had arranged such sale to such third party or third parties, and in any event such payment shall be made not later than July 1, 1920.

"(7) It is expressly understood between the parties that the approval of the Railroad Commission of the State of California must be obtained not only to the carrying out by seller of said contract of December 15, 1919, and the issuance of securities to enable the same to be carried out, but also to the abandonment of the pipe lines covered hereby and it is expressly agreed that seller shall not be responsible for inability to sell and deliver the same should said Railroad Commission fail to approve any act necessary by seller to carry out the terms of this agreement.

"(8) Time is hereby made of the essence of this agreement."

Thereafter the Santa Maria Gas Company was organized and became the successor of the Santa Maria Gas and

Power Company. The Railroad Commission approved the transfer of the properties of the Midland Counties Public Service Corporation and the appellant herein took title to the properties, including the Graciosa pipe-line on June 26, 1926.

Emerson paid the initial payment of $2,500 on July 3, 1920, and on the same day appellant gave Emerson a letter extending his time under the contract and provided: "The time within which you may remove the 8 inch line, in accordance with the terms of the contract, is extended as follows: One-half of said line shall be removed, taken and paid for not later than September 15th, 1920, three-fourths of said line shall be removed, taken and paid for not later than October 1, 1920; and the balance of the line shall be removed, taken and paid for not later than November 1, 1920." On July 17, 1920, Emerson paid the $5,000 required to be paid before commencing the work of removing the pipe-line. On July 20, 1920, Emerson was given a second extension of time by letter. Under this extension Emerson's time to remove the 8-inch pipe-line was extended to December 1, 1920, and Emerson was required to pay interest at the rate of six per cent on the purchase price of the line as follows: If one-half of the purchase price is not paid by September 15, 1920, interest on any balance thereof from date; if three-fourths of the purchase price is not paid by October 1, 1920, interest on any balance thereof from that date; and if the entire purchase price is not paid by November 1, 1920, interest on any balance thereof from that date.

On October 11, 1920, Emerson and the appellant entered into an agreement which provided in substance that title to the Graciosa pipe-line shall pass to Emerson when he pays ninety cents a foot therefor, that the sum of $7,500 paid under the agreement of February 11, 1920, shall apply on the payment to the last pipe removed, and that in any event title to all the pipe shall pass to Emerson when he pays in full the sum of $108,000, the entire purchase price.

Thereafter, on October 13, 1920, a further extension of time was obtained by Emerson in which to pay for the pipe.

Emerson removed and paid for several thousand feet of pipe, but on February 21, 1921, all of the pipe involved in this suit was still in the ground and on said date appellant

served upon Emerson and Howk, who were then in default, a notice that if the entire purchase price was not made by March 1, 1921, they would no longer consider themselves bound in any way by said agreement and modifications thereof. After service of this notice no further payments were made by respondent.

Shortly after March 1, 1921, appellant on its own account commenced and thereafter continued the removal and sale of the remaining pipe in ground.

Emerson and Howk were adjudicated bankrupts on May 11, 1921.

The $7,500 which Emerson and Howk paid to be applied on the last pipe removed was not refunded. The trial court found that no consideration whatever passed for the execution of the agreement of October 11, 1920, and that, therefore, title to the pipe in question was not retained or reverted thereto by said agreement in appellant.

The principal question to be determined and the crucial one in this case is the nature of the contract of February 11, 1920, as to whether it was a conditional sale after the approval by the Railroad Commission. Appellant contends that although not expressed, the contract plainly shows upon its face that the parties intended that title should remain in the Santa Maria Power and Gas Company, or its successors, the appellants herein, until the pipe had been removed from the ground or the purchase price had been paid.

It is to be noted that paragraph 3 of the contract provides that "all of the pipe *shall be taken* and paid for in any event before July 1, 1920, except that seller agrees to allow buyer such reasonable additional time to take and remove not exceeding ten thousand feet of said eight inch pipe line, about forty-six hundred (4,600) of which is in the bed of the Santa Maria River." We think this paragraph contains not only a limitation as to the time allowed Emerson to pay for the pipe, but also an express time limit to "take" and "remove" the pipe.

It is also to be noted that by paragraph 8 of the agreement time is expressly made of the essence of the contract.

To us it seems clear that under this agreement it was the intention of the parties, and so contemplated by them, that title should not pass until such time as the pipe was

removed from the land. If not, what was the purpose of inserting these provisions in the contract? They were inserted for some purpose. The most reasonable conclusion to us is that they were inserted to limit the passing of title to so much only of the pipe as was taken and removed within the time mentioned. Further, under the time extensions executed prior to the agreement of October 11, 1920, a time limit is also mentioned within which the pipe might be removed. The extensions given Emerson after October 11, 1920, contain no such provision, but this may be readily accounted for because by that agreement the parties expressly stated that title should not pass until the purchase price of the pipe had been paid.

We must conclude that the parties did not intend to pass title, since had they so intended, the provisions found in the contract and in the time extensions would have been meaningless.

Nor do we find anything in paragraph 6 of the contract which is opposed to our conclusion. The object of that paragraph was to specify the time when the purchase price should be paid in the event the pipe-lines were sold in place.

The appellant contends that even if it might be construed that title to the whole pipe-line passed to Emerson under the contract, notwithstanding title was reverted by the agreement of October 11th. As heretofore stated, the trial court found the latter agreement to be without consideration, and we are not disposed to disturb its finding. However the fact may be, we do not think it necessary to a determination of this case because of our conclusion that title did not pass under the original contract.

As between the buyer and the seller, the question whether or not, and when, the title passes to property sold is dependent upon the intentions of the parties. (24 R. C. L., sec. 275, p. 15; 35 Cyc. 277; and see note to *Barber* v. *Andrews*, 26 L. R. A. (N. S.), at p. 7.) Where the contract is evidenced by an instrument in writing, the intention of the parties is to be determined primarily by a reference to the provisions thereof. (*Potts Drug Co.* v. *Benedict*, 156 Cal. 324 [25 L. R. A. (N. S.) 609, 104 Pac. 432].)

True, the parties are designated as "seller" and "buyer," but this phraseology is not in itself conclusive

upon the subject, and as was said in *Turner, Kuhn & Fraser, Inc.,* v. *Jones,* 61 Cal. App. 732 [215 Pac. 1033], "there is no question, but that such language has a certain persuasive force in determining the intention of the parties, as it imports a present sale. (Citing cases.) But the mere use of the words of present sale is not absolutely controlling unless the contract shows such intent. (*Potts Drug Co.* v. *Benedict,* 156 Cal. 322 [25 L. R. A. (N. S.) 609, 104 Pac. 432.)" And the same may be said of the fact that $7,500 was paid to apply upon the last pipe removed. (*Granelli* v. *Globe R. G. & M. Co.,* 48 Cal. App. 103 [191 Pac. 720].)

Nor is appellant guilty of a conversion of so much of the pipe as was to be paid for with the $7,500 which Emerson deposited. This sum was only to apply on account of the last pipe removed. As Emerson and Howk were in default under the contract they would not be entitled to recover this sum even though there is no forfeiture clause in the contract. (*Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].) This being so, we fail to see how appellant can be held accountable for said $7,500.

The thread protectors involved in this suit at no time became the property of the appellant, and as the court below found, there was a conversion of same, that part of the judgment should stand.

We do not deem it necessary to discuss the many other points argued on this appeal.

A mistake evidently occurred in entering the judgment upon the findings of fact and conclusions of law in that the total principal sum of the judgment is equal only to the amount found due on account of the conversion of the pipe. This may give rise to some doubt as to whether any judgment was given for the pipe thread protectors. It is therefore ordered that the judgment appealed from be reversed and that the trial court enter judgment for the plaintiff for the amount allowed in the findings of fact and conclusions of law for pipe thread protectors and interest. Appellant will recover its costs on appeal.

Nourse, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 27, 1927, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 23, 1927.