[Civ. No. 23.   Fourth Appellate District.—January 16, 1930.]

E. W. BAILLY, Trustee in Bankruptcy, etc., Respondent,
v. HENNING LOOCK, Appellant.

Martin J. Coughlin and W. E. Byrne for Appellant.

N. C. Peters for Respondent.

SLOANE, P. J.—This is an action by a trustee in bankruptcy to recover the value of a restaurant business and equipment alleged to have been acquired by the defendant as a preferred creditor from the bankrupt George Nick Georgelas. The defendant was adjudged a bankrupt on the sixteenth day of March, 1928, and the complaint alleges "that prior to said adjudication in bankruptcy, to-wit, on or about the 31st day of January, 1928, while said George Nick Georgelas was insolvent, the said defendant herein was a creditor of said bankrupt, claiming to have claims against him in the sum of $2,575.00 and in order to obtain a preference over other creditors of the same class, said defendant took possession of the restaurant equipment, stock and fixtures of said George Nick Georgelas known as the 'Star Grill' at No. 695 Third Street, San Bernardino, California, the reasonable value of which was the sum of $3,000.00.''

The allegations of the complaint and the findings of the trial court are to the effect that the defendant acquired possession of said property by a preferential assignment and transfer from the bankrupt. It further appears from the record on this appeal that prior to the adjudication in bankruptcy Georgelas, the bankrupt, acquired the property in controversy under various sales contracts, and the real controversy on this appeal is as to who was the owner of the property at the time the defendant here obtained possession thereof.

Judgment was given for the plaintiff on findings sustaining the claim that prior to the said adjudication of bankruptcy, while the said George Nick Georgelas was insolvent, and while the defendant herein was a creditor of the said bankrupt, he obtained the possession of the restaurant equip-

ment, stock of goods and fixtures, as a preferred creditor under a transfer by the bankrupt, and that the value thereof was the sum of $3,000; and it was by the judgment appealed from, decreed that the plaintiff have and recover from the defendant the sum of $3,000 and costs taxed at $30.70.

The defendant contends on this appeal that the findings are not supported by the evidence, but that, on the contrary, it conclusively appears from the evidence in the case that the bankrupt was at no time the owner of this property, but that he held the same under conditional contracts of purchase, wherein title was reserved to the seller, in which title a right of possession on breach of the contract was reserved to the sellers and that defendant obtained title and possession from the original vendors, after conditions broken.

The original restaurant plant was acquired by Georgelas from one Petropoulos, and at the time of the transfer to defendant was held by him under the following contract:

## "Agreement of Sale.

"This Agreement, made and entered into this 9th day of December, 1925, by and between George Petropoulos, party of the first part, sometimes hereinafter referred to as the seller, and G. N. Georgelas and George G. Simon, both of the same place, parties of the second part, sometimes hereinafter referred to as the buyers,

"Witnesseth: That for and in consideration of the purchase price hereinafter named, the covenants and agreements herein contained, and for other good and valuable consideration, the seller has agreed and does hereby agree to sell, transfer, assign, convey and set over unto said buyers all that certain personal property situate in the City of San Bernardino, County of San Bernardino, State of California, more particularly described as follows, to-wit:

"That certain restaurant and cafe business now owned, conducted and carried on in said City of San Bernardino at 695 Third Street, named and known as the 'Star Grill,' together with all equipment, fixtures, trade fixtures, including tables, chairs, stools, counters, partitions, dishes, cooking, kitchen table and restaurant equipment therein, all stock in trade and supplies on hand of every kind, and the lease under which said seller occupies said premises, and also

the good will of said business; for and at the agreed purchase price of Two Thousand ($2,000.00) Dollars, lawful money of the United States, said purchase price to be paid as follows, to-wit, Five Hundred ($500.00) Dollars, cash, upon the execution of this agreement, receipt of which is hereby acknowledged by said seller, and the balance of the said purchase price to be paid as follows: all present existing indebtedness of said business, including the mortgage now thereon and outstanding bills, shall first be paid and satisfied by said buyers, and said buyers hereby agree to and do assume and agree to pay all such indebtedness as soon as it is possible for them to do so; and when said indebtedness is paid said buyers shall pay the said seller the sum of One Hundred ($100.00) Dollars per month on the first day of each and every month until said balance of said purchase price herein named is fully paid and discharged, it being agreed that no interest shall be paid thereon.

"It Is Further Agreed that upon the payment to said seller in full of the purchase price herein named, said seller will execute and deliver to said buyers, or their successors, a good and sufficient bill of sale transferring to said buyers all the property herein agreed to be sold.

"It Is Further Agreed that said buyers shall take immediate possession upon the execution of this agreement and shall retain possession of said premises and business and conduct and carry on the same as and for their own business from date hereof, so long as they comply with the terms of this agreement. Said seller is hereby released by said buyers from all indebtedness on said business herein mentioned and said buyers hereby agree to hold him harmless from any further liability thereon. An itemized list of the indebtedness herein referred to and which said buyers have assumed and agreed to pay has been this day agreed on and approved, attached hereto and made a part hereof.

"In Witness Whereof the parties hereto have hereunto set their hands.

"G. PETROPOULOS,

"Party of the first part, Seller.

"G. N. GEORGELAS,

"Parties of the second part, Buyers."

Prior to the transfer to defendant, Georgelas had defaulted in deferred payments due on the contract purchase price, and on the 1st of February, 1928, and shortly prior to the adjudication in bankruptcy, the defendant procured from Petropoulos the following instrument of assignment of agreement of sale of December 9, 1925:

"Assignment of Agreement.

"For valuable and sufficient consideration to me in hand paid, I, George Petropoulos of the City of San Bernardino, County of San Bernardino, State of California, hereby sell, assign and transfer to Henning Loock of said city, all my right, title and interest in and to the annexed agreement of sale dated the 9th day of December, 1925, by and between George Petropoulos as party of the first part and G. N. Georgelas and George G. Simon as parties of the second part.

"In Witness Whereof, I have hereunto set my hand this first day of February, 1928.

"G. PETROPOULOS."

To which above assignment was attached the agreement of purchase and sale between Petropoulos and Georgelas, hereinbefore set out.

On the same date Petropoulos also executed to the defendant a bill of sale in words and figures as follows:

"Bill of Sale.

"For a valuable and sufficient consideration to me in hand paid, I, George Petropoulos of the city of San Bernardino, County of San Bernardino, State of California, hereinafter designated the Seller, do hereby sell, assign, transfer and set over to Henning Loock, of said City, hereinafter designated the Buyer, and to his heirs and assigns, all that certain personal property situate in said city more particularly described as follows, to-wit:

"That certain restaurant and cafe business now owned, conducted and carried on in said city of San Bernardino, at No. 695 Third Street, in said city, named and known as the 'Star Grill,' together with all equipment, fixtures, trade fixtures, including tables, chairs, stools, counters, partitions, dishes, cooking, kitchen, table and restaurant equipment therein, all stock in trade and supplies on hand of every

kind, and the lease under which seller occupies said premises, and also the good will of said business.

. "In Witness Whereof, the seller has hereunto set his hand this 1st day of February, 1928.

"G. Petropoulos."

On February 3, 1928, the defendant obtained from Georgelas the following instrument, releasing and abandoning any right he might have under and by virtue of the sales agreement with Petropoulos of December 9, 1925:

"Be It Known, that I, G. N. Georgelas have abandoned and do hereby abandon all my right or rights under and by virtue of that certain agreement of sale dated December 9th, 1925, by and between George Petropoulos as seller and G. N. Georgelas and George G. Simon as buyers; that I have acquired all the right, title and interest of the said George G. Simon in and to said agreement and arising out of the same by virtue of an assignment duly executed and delivered by the said George G. Simon to me, and that I have surrendered up and do hereby surrender up to said George Petropoulos and his assigns the right to the possession to all that certain personal property described in said agreement of sale; and I hereby release said George Petropoulos and his assigns from any and all obligations whatsoever, arising out of said agreement of sale.

"Dated this 3rd day of February, 1928.

"G. N. Georgelas."

It is under the foregoing assignment and bill of sale from Petropoulos and release and quitclaim of Georgelas that appellant bases his claim of title unaffected by the bankruptcy proceedings on said restaurant and equipment, or at least to such part thereof as was covered by the original sales contract between Petropoulos and Georgelas.

It seems clear, if Petropoulos, under the agreement of December 9, 1925, retained title to the property and premises therein described, subject to the right to repossess himself of the same upon default of Georgelas in complying with the conditions of the agreement, and meeting the stipulated payments, that he had a vendable title to the property, which at the time of the transactions in question with defendant, he had a right to transfer to the latter, and which the defendant had a right to acquire.

If Petropoulos would have had a right to claim this property in the bankruptcy proceedings as against the bankrupt's creditors, it was a right which he could immediately transfer to a third party, and which a third party could properly acquire.

The trial court in effect finds from its construction of the sales agreement of December 9, 1925, and the finding rests wholly on the interpretation of this agreement, that the transaction was a sale, and that Georgelas became the owner of this property.

We do not think that this finding can be sustained. It appears on the contrary, from the terms of the instrument itself, that it was the intention of the parties that title was not to pass to the purchaser until full payment had been made of the stipulated consideration, and a bill of sale executed to the purchaser.

The instrument is not in terms denominated an instrument of sale. It expressly stipulates that "the seller has *agreed,* and does hereby *agree* to sell, transfer, assign, convey and set over" the property in question.

It is further agreed "that upon the payment to said seller in full of the purchase price herein named, said seller will execute and deliver to said buyers or their successors, a good and sufficient bill of sale, transferring to said buyers all the property herein agreed to be sold."

And further, the provision with reference to vendee's possession is inconsistent with an intention to make a present transfer of title. The agreement recites "that said buyers shall take immediate possession upon the execution of this agreement, and shall retain possession of said premises and business and conduct and carry on the same as and for their own business, from date hereof, so long as they comply with the terms of this agreement."

It is true that the sales agreement contains no express retention of title, or words of surrender or cancellation in event of default in payments, but it has been repeatedly held in this state, that whether or not a contract of this character is one of conditional sale, reserving the title in the seller, or one transferring title to the buyer, is primarily a question of intention. The well settled rule is stated in 22 California Jurisprudence, page 942, as follows:

"A question as to the passing of title is to be determined by reference to the showing as to the intention of the parties."

And again at page 948:

"Words of transfer or conveyance in the present or past tense, i. e., 'sells' or 'sold' not 'agrees to sell,' while not conclusive of the question as to whether the parties contemplated a consummated sale will, it seems, be held to be determinative, unless their force and effect is overcome by other provisions of the instrument."

In *Koehler* v. *Hays*, 41 Cal. 455, 458, the court uses this language with reference to the significance of providing for a subsequent bill of sale:

"The provision for the giving of a bill of sale, upon the payment of the price of the piano, indicated. that it was not the intention of the parties that the title should pass upon the making of the agreement."

To the same effect, in *McArthur, etc.*, v. *Hagihara*, 22 Ariz. 100 [13 A. L. R. 1038, 194 Pac. 336], it is said:

"The provision in the contract that when the purchase price is paid in full, a bill of sale will be given, is utterly inconsistent with the claim that title was to pass when the agreement was made, or that there was an absolute sale. . . . " (With citations.)

In *Potts Drug Co.* v. *Benedict*, 156 Cal. 322 [25 L. R. A. (N. S.) 609, 104 Pac. 432], where the question was as to whether the parties agreed upon a present unconditional transfer, the court says:

"Their intention in this regard, is to be here ascertained from the written instruments duly executed and delivered 'The agreement is just what the parties intended to make it. If that question is clearly and unequivocally manifested *cadit quoestio.*' (7 Benjamin on Sales, sec. 309.) In *Elgee Cotton Cases*, 22 Wall. 180, 187 [22 L. Ed. 863], it was said by the United States Supreme Court:

"It must be admitted that there is often great difficulty in determining whether a contract is itself a sale of personal property, so as to pass the ownership to the vendee, or whether it is a sale on condition to take effect or be consummated only when the condition shall be performed, or whether it is a mere agreement to sell. It is doubtless true that whether the property passes or not is dependent upon

the intention of the parties to the contract, and that intention must be gathered from the language of the instrument.''

Section 1140 of the Civil Code provides that ''the title to personal property sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified whether it is separated from other things or not.''

The evidence shows that Georgelas was in default in his payments, and that nothing had been paid under this contract since December, 1927, and that upwards of $575 was due and unpaid.

The trustee succeeded to no greater rights in the bankrupt's property than the bankrupt himself had, and even if either the bankrupt or the trustee had the right to be relieved from default in payment by a tender of the amounts due, there is nothing to indicate that either at any time tendered any balance due under the contract, to either Petropoulos or the defendant here, his assignee.

The defendant Loock did not acquire his claim of title to this property from Georgelas. He acquired it, if at all, under the assignment and bill of sale from Petropoulos. The instrument executed by Georgelas is not, and does not purport to be, a transfer or assignment either to Petropoulos or the defendant. It is in express terms, merely a release or quitclaim of any claim of right under the sales agreement which he might have despite his default.

The rule is stated in 7 Corpus Juris, page 123, as follows:

''In case of property sold to the bankrupt and not paid for, the trustee takes no title, if the conditions or circumstances of the sale were such that title did not pass to the bankrupt, but if title actually passed, the fact that the property was not paid for does not prevent the trustee from taking title.

''Where the contract was one of conditional sale the reservation of title in the seller until payment for the property is made, will prevent the title from passing to the trustee, although the goods were in the possession of the bankrupt.''

The text as thus stated in Corpus Juris, is sustained by the authorities cited.

In *Bryant* v. *Swofford Bros.*, 214 U. S. 279, 291 [53 L. Ed. 997, 29 Sup. Ct. Rep. 614, 618], where the bankrupts prior to adjudication returned to the seller goods which they were purchasing under conditional sales contract, the court found that "the trustee has no higher rights in this regard than the bankrupt. . . . It follows that so far as the identified goods . . . are concerned, . . . the dry-goods company must prevail."

It is held in *Zartman* v. *First Nat. Bank*, 216 U. S. 134 [54 L. Ed. 418, 30 Sup. Ct. Rep. 368], that "The trustee takes the property of the bankrupt not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens and equities."

In the case of *In re Rosenbloom*, 280 Fed. 139, 141, certain goods had been sent to a dealer on consignment to be re-sold. Within four months prior to the dealer's adjudication in bankruptcy, the parties to the transaction had a settlement, and it was agreed that the dealer should hold the goods on hand in storage for the seller. The court held that the trustee in bankruptcy had no right to these goods, and in the opinion says:

"In view of the consideration hereinafter pointed out, it becomes unnecessary to determine whether the agreement involved was one of absolute sale with an attempted re-tention of title operating as a chattel mortgage lien in the petitioner, a contract of conditional sale with title remaining in the petitioner until re-sale by the bankrupt, or an arrangement of pure agency. As this agreement, valid between the parties thereto, and based upon present consideration, was mutually settled and rescinded by such parties before the filing of the petition in bankruptcy, that settlement by which the petitioner received and accepted his own property, was also for a present consideration.

"It cannot be successfully contended that the result of this settlement was to effect a voidable preference in favor of the petitioner. The contract under which the goods were delivered to the bankrupt having been made prior to the statutory four months' period before bankruptcy for a present consideration, and the rights of the parties with respect thereto being valid and enforceable as between them, the surrender of possession of this property was merely a delivery thereof to its owner, to which the

latter was entitled, and was not a transfer by the bankrupt of his property to one of his creditors, and hence such transfer did not constitute a preference.'' (With numerous citations.)

In *Illinois etc. Co.* v. *Goldman*, 257 Fed. 300, where the buyer obtained goods on credit through fraudulent representations, and later voluntarily transferred his accounts to the seller in payment thereof, the court said:

''But on June 9th, appellant concededly had a right to rescind the fraudulent sales, and to recover back such of the goods as were then in the bankrupt's possession. Clearly a return of these goods would not be a preference; to the extent of their value, payment could no more effectuate a preference; neither transaction would diminish the estate to which bankrupt was then entitled. That appellant did not expressly assert a right of rescission is immaterial; it relinquished that right in confirming the sale; it then gave up a property interest equal to the value of the goods then on hand. To that extent the transfer was for a present consideration, and not preferential.''

Under the transaction involved here, Petropoulos was entitled to possession of the property of the Star Grill covered by his sales contract because of the default of Georgelas in payment of the installments due. This interest in the premises he had a right to transfer and did transfer to the defendant who was placed in his shoes in the matter of taking and holding possession.

In *Liver* v. *Mills*, 155 Cal. 459 [101 Pac. 299, 300], where the owners of an automobile had made a contract of conditional sale thereof, it is held that when a contract for the sale of personal property expressly reserves title in the vendors until the purchase money is paid, the title carries with it the right of possession in case of default, though such contract does not contain the usual provision to that effect.

''The purchasers had no right of possession except that given them by the contract, which must be construed as authorizing them to retain possession only so long as they should comply with the conditions required to be performed by them.''

The same rule is expressed in *Los Angeles etc. Co.* v. *Hansen*, 46 Cal. App. 5, 8 [188 Pac. 292].

In *Hart* v. *Emerson etc. Co.*, 203 Fed. 60, 62, the trustee brought suit to recover property or its value upon the ground that it had been transferred to the seller by the bankrupt as a preference under the bankrupt law. The court says:

"In the case here presented, the conditional vendor reclaimed its goods under a title which was superior to that of its conditional vendee, and, as at the time of the transaction the return of the property was a lawful and valid act as between the parties, and as the rights of no creditor had then attached, it would seem clear upon principle that the transaction cannot be successfully assailed by one who is subsequently vested with the rights of a judgment creditor. (Citing authorities.) The same considerations lead me to the conclusion that the return of the goods cannot properly be treated as a preferential transfer, for the defendant took back the property under the assertion of a paramount title, and did not take it as a creditor for application upon a debt."

In *Jennings* v. *Swartz*, 86 Wash. 202 [149 Pac. 947, 949], a conditional seller repossessed property sold prior to the buyer's adjudication as a bankrupt, and the court says:

"The vendee never complied with the contract of purchase, and therefore did not secure title. The Trustee in bankruptcy obtained no more interest in the boiler than the vendee had at the time of the adjudication in bankruptcy."

We are satisfied that the weight of authority sustains the proposition that title to the original restaurant plant, as covered by the Petropoulos sales contract, remained in Petropoulos, and that the relinquishment by the bankrupt of any claim to said property, did not constitute a transfer direct to Petropoulos or his successor in interest, the defendant. Even though Georgelas might have relieved himself of his default in failing to make the deferred payments, as required by his contract, by tendering the amounts due thereon, he did not elect to do so. On the contrary, by his declaration of release and abandonment, he notified Petropoulos and his assigns that he relinquished all right to consummate his contract of purchase. This cannot be construed as a transfer. It did not invest either

Petropoulos or the defendant Loock with any new interest or ownership. It was merely a surrender, or letting go, a waiver of any personal claim under the contract, to the property in question. Had Georgelas had title to this property at the time of this release, it doubtless by way of quitclaim, would have divested him of such right. Not having title, and right of possession having become subject to forfeiture by his default in meeting the conditions of his contract, he had nothing to transfer and no interest that could pass to the trustee in bankruptcy.

Our conclusion is that, to the extent at least of the restaurant property covered by the original sales agreement of December 9, 1925, the defendant did not acquire the same from the bankrupt, and the · plaintiff as trustee for the bankrupt estate was not entitled to recover its value from defendant. The goods thus affected, are described in the sales contract as follows:

''That certain restaurant and cafe business now owned, conducted and carried on in said city of San Bernardino, at . 659 Third Street, named and known as the Star Grill, together with all equipment, fixtures, trade fixtures, including tables, chairs, stools, counters, partitions, dishes, cooking, kitchen, table and restaurant equipment therein; all stock in trade and supplies on hand of every kind, and the lease under which the seller occupies said premises, and also the good-will of said business, for an agreed purchase price of $2000.00.''

Respondent, however, calls attention to the fact that not all of the restaurant property involved in this action, and of which defendant came into the possession, was covered by the Petropoulos sales contract, and contends that the valuation of $3,000, found by the trial court against defendant, was upon portions of the restaurant equipment belong-- ing to Georgelas, exclusive of the Petropoulos agreement

This additional equipment of the restaurant concededly was to some extent acquired by Georgelas from other vendors, under conditional sales contracts, in which title was reserved to the sellers and had never vested in the bankrupt. The evidence in the record indicates that the defendant Loock acquired this additional property by assignment from the original vendors after they had re-

possessed themselves of the property upon default of the vendees.

The finding upon which the recovery of $3,000 from defendant rests is "that said restaurant equipment, stock fixtures and other articles, including dishes, silverware and supplies which at the time belonged to George Nick Georgelas at said Star Grill, was of the reasonable value of the sum of $3,000.00, over and above contract interests of other parties, covering a portion of the property of said Star Grill."

This finding leaves in extreme uncertainty, just what portion of the restaurant and equipment was by the court included in this $3,000 valuation, and as to what portion was considered as covered by contract interests of other parties. If the amount of the judgment was based upon a valuation of the property included in the Petropoulos contract, it was erroneous; and that the valuation did include this portion of the restaurant equipment is indicated by the further words of the finding "that upon said third day of February, 1928, at which time said defendant obtained possession of said property, he also obtained a purported transfer or waiver from George Nick Georgelas, transferring the property to him as payment upon, or in cancellation of the claim of said defendant against said George Nick Georgelas, and without any further consideration therefor, and that, at the time, said defendant well knew and had reasonable cause to know, that said defendant (bankrupt) was insolvent, and that enforcement of said transfer would effect a preference."

Since the complaint in this action alleges this purported transfer or waiver as the gist of plaintiff's cause of action, and in view of the fact that such purported transfer or waiver related solely to the original Petropoulos agreement of December 9, 1925, the conclusion cannot be avoided that the trial court included the property acquired under that agreement, in fixing the amount to be recovered from defendant.

The evidence doubtless shows that there was property included in this restaurant equipment and belonging to the bankrupt, and which came into the hands of defendant, which was not covered by the various contract agreements referred to, but the extent or value of the same is not

sufficiently shown to justify the finding of a valuation of $3,000 thereon.

Appellant claims that the possession of this last-described property was rightfully obtained by him under the terms of a chattel mortgage assigned to him by the mortgagee, but we think it sufficiently appears that this mortgage was invalid as to creditors of the bankrupt, by reason of failure at the time of its execution, to comply with the provisions of section 3440 of the Civil Code in giving notice of intention to execute the same.

Without ruling on this point, we are disposed to disregard defendant's claim of right of possession under this mortgage, but for other reasons hereinbefore stated the judgment is reversed.

Barnard, J., and Marks, J., concurred.