[Civ. No. 6665. Third Dist. Mar. 16, 1942.]

W. A. BEAUDRY, Appellant, v. M. R. PETERSON, Respondent.

Ronald D. Wolfe, H. B. Wolfe and Byron Arnold for Appellant.

Charles L. Gilmore for Respondent.

DEIRUP, J. pro tem.—Plaintiff sued upon a common count to recover the sum of $4,000 and interest. The trial court found in his favor and judgment was entered as prayed. Thereafter the court made an order granting a new trial, from which this appeal has been taken.

The findings of fact disclose that the plaintiff and the defendant M. R. Peterson (doing business under the name of Giant King Mining Company), who is the sole defendant in the action, entered into an agreement on October 11, 1939, for the sale and purchase of personal property. The agreement, omitting the description of the property, reads as follows:

"This Agreement, made October 11, 1939, between W. A. Beaudry, Seller, and Giant King Mining Company, Buyer, Witnesseth:

"That Seller agrees to sell and Buyer agrees to buy that certain mining machinery, equipment, etc., situate at the

Three Star Mine, near Ophir, in Placer County, California, to-wit:

.   .   .   .   .   .   .   .   .   .   .   .   .

for the full purchase price of Six Thousand Five Hundred Dollars ($6,500.00), payable as follows:

"Two Thousand Dollars ($2,000.00) down, receipt of which is hereby acknowledged by Seller, and the balance of Four Thousand Five Hundred Dollars ($4,500.00) at the rate of Two Hundred Dollars ($200.00) or more per month on the 1st day of each month, commencing January 1, 1940, and until the full purchase price be paid, with interest at the rate of four per cent (4%) per annum, payable monthly in addition to the above mentioned monthly payments.

"Buyer may have immediate possession thereof, and shall keep the same in good order, condition and repair, usual wear and tear excepted.

"The failure or default of Buyer in any particular hereunder shall, at the option of Seller, cause all Buyer's rights in and to said property, and the whole thereof, to cease and terminate, and in such event Seller may retake said property, and the whole thereof, without necessity of force or legal action therefor, and all amounts paid him hereunder shall be retained by him as rental and as liquidated damages. The waiver of any failure or default of Buyer shall not be considered or construed as a waiver of any further or future failure or default.

"Time is of the essence of this agreement and contract, which is executed in duplicate and which binds the parties, and their and each of their heirs, successors, administrators, and assigns."

On the same day, and presumably at the time of the execution of the contract, the parties agreed as follows:

"The undersigned agrees that extension of time for payments will be made if necessary on account of the following reasons:

"If operations must stop or be delayed as a result of war in which the United States is a party, prohibition of operations by Federal Agencies or law, strikes, serious accidents prohibiting the operation of said property or mill, inability to obtain necessary operating materials in the open market, weather conditions, acts of God or other causes beyond control and due to no fault or negligence on your part.

"15% discount will be allowed if Mill is paid within one year."

Defendant took possession of the machinery after making the initial payment called for by the contract and installed it in a quartz mill. Thereafter he made further payments amounting to $500, leaving a balance of $4,000 unpaid on the principal. On May 16, 1940, virtually all of the machinery was destroyed by fire without fault on the part of either buyer or seller. The trial court found in favor of the plaintiff on all the issues raised by the pleadings. In reference to the supplementary agreement it found that the defendant "never requested an extension of time for payments due or to be due under said contract, but at all times since May 16, 1940, has denied any liability to pay said sum of $4,000.00 and interest or any part thereof."

It is clear to us that the judgment is fully supported by the findings. The agreement was a conditional sales contract and the title was reserved in the plaintiff even though the contract does not so provide expressly. (*Katz* v. *People's Finance etc. Co.*, 101 Cal. App. 552 [281 Pac. 1097]; *Bailly* v. *Loock*, 103 Cal. App. 220 [284 Pac. 235].) In the event of default the seller had the option to repossess the property or to sue for the purchase price. (*Johnson* v. *Kaeser*, 196 Cal. 686 [239 Pac. 324]; *Smith* v. *Miller*, 5 Cal. App. (2d) 564 [43 Pac. (2d) 347].) His right to bring such an action was not defeated by the destruction of the property, for it is now the law in this state, as it has been for years in the great majority of other jurisdictions (24 R. C. L. 494; 2a Uniform Laws Annotated, 196), that one who contracts to buy personal property by an agreement of this nature and takes possession of it assumes the risk of loss. This is provided unequivocally in section 1742 of the Civil Code, which reads as follows:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that:

"(a) Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obli-

gations under the contract, the goods are at the buyer's risk from the time of such delivery.

"(b) Where delivery has been delayed through the fault of either the buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault."

Up to the time of the adoption of the Uniform Sales Act by the California Legislature in 1931 (Stats. 1931, p. 2234; Civ. Code, sec. 1721ff), it was the law of this state that the risk of loss followed the title to goods even though possession had been transferred under a conditional sales contract. (*Kirtley* v. *Perham,* 176 Cal. 333 [168 Pac. 351]; *Potts Drug Co.* v. *Benedict,* 156 Cal. 322, 334 [104 Pac. 432, 25 L. R. A. (N. S.) 609]; *Ross* v. *McDougal,* 12 Cal. App. (2d) 172 [55 Pac. (2d) 574]; *Cocores* v. *Assimopoulos,* 4 Cal. (2d) 82 [47 Pac. (2d) 699].) Holding that this was the established rule in California, the court said in *Kirtley* v. *Perham, supra*:

"It is a well-settled proposition that an agreement of sale may transfer the right of possession to the vendee without transferring to him the title. Such was the effect of this agreement. The case, therefore, comes within the rule stated in *Potts* v. *Benedict,* 156 Cal. 334 [25 L. R. A. (N. S.) 609, 104 Pac. 432], that upon an executory agreement of sale, where title is retained in the vendor, although possession is given to the buyer, the loss entailed by the destruction or extinction of the subject matter, without fault by either party, falls upon the vendor, and that he cannot recover any balance of the purchase price remaining unpaid, and is liable to the buyer for the repayment of the portions of the price previously paid."

It is obvious that the enactment of section 1742 of the Civil Code made this rule entirely obsolete and transferred the liability for loss from the seller to the purchaser under a conditional sales contract. In *Kelly* v. *Smith,* 218 Cal. 543 [24 Pac. (2d) 471], it is said that the case of *Kirtley* v. *Perham, supra,* "is no longer of any authority for the reason that the rule was changed by legislative enactment in 1931. . . . It will be observed that this legislative enactment is in keeping with the extensive use of the so-called conditional sales contract and the great expansion of credit which has accompanied it. The same reasons which prompt the application of the majority rule respecting risk of loss in California to

personal property ought to be given consideration when considering the loss of improvements to real property. Besides bearing in mind the great development of trade through the medium of such contracts with reservations of title as security we ought to consider upon whose shoulders devolves the responsibility of so caring for the property that fire will not occur, and how improper care will contribute to the hazard thereof.''

The risk of loss should be borne by the purchaser because he is the one who has the use of the property and is in a better position to protect it. The record discloses that the defendant purchaser caused the quartz mill, including property described in the contract, to be insured and that he filed a proof of loss after the fire in which he made a claim for damages to at least a portion of the property. The record does not show how much, if anything, he collected from the insurer as compensation. This is immaterial in our view of the case, but these facts indicate that he recognized the legal obligation imposed by the contract to protect himself against loss.

The order of the trial court was that: ''The motion for a new trial is granted.'' Insufficiency of the evidence to justify the judgment is not mentioned. But the signed document in which the order appears contains a memorandum of decision in which the judge of the trial court states that: ''It is fundamental that where the thing sold is destroyed, the loss follows the title'' and that the title to the personal property under consideration remained in the plaintiff, as was held in *Seré* v. *McGovern,* 65 Cal. 244 [3 Pac. 859]. This statement of law is not equivalent to the declaration required by section 657 of the Code of Civil Procedure that, in the opinion of the court, the evidence was insufficient to justify the judgment and that the new trial was granted on that ground. On the contrary, it is obvious that the attention of the court was not directed to the provisions of section 1742 of the Civil Code, as enacted in 1931, and that its sole reason for granting a new trial was that, in its opinion, the findings did not support the judgment. There are authorities to the effect that where the nature of the order itself necessarily implies that the trial court deems it necessary to re-examine the facts, a statement in the order that the evidence is insufficient is not essential. (*Lucerne Country Club* v. *Beal,* 21 Cal. App. (2d) 121 [68 Pac. (2d) 408]; *Secreto* v. *Carlander,* 35 Cal. App.

(2d) 361 [95 Pac. (2d) 476].) But such an inference cannot be drawn in this case. The evidence was, in the opinion of the judge of the trial court, sufficient to justify the findings of fact and the findings did, as a matter of law, support the judgment. The purpose of the order was not to permit a re-examination of the facts in the case, but to apply a different view of the law to the findings. Since the court decided the case correctly in the first instance, a new trial should not be required.

█ It was provided in the supplementary contract that the plaintiff would extend the time of payments under the contract if operations were delayed for certain reasons, including "causes beyond control and due to no fault or negligence" on the part of the defendant. Counsel for respondent contends that the fire in the mill must have prohibited the operation of the mill and was therefore an excuse for the failure to make payments under the contract. His position is not tenable. As found by the trial court, the defendant at no time requested an extension of time for this reason, but denied all liability under the contract. And the record shows that the defendant was in default before the time of the fire.

The order appealed from is reversed.

Tuttle, J., and Thompson, Acting P. J., concurred.

A petition for a rehearing was denied April 15, 1942, and the following opinion thereupon rendered:

THE COURT.—█ Upon petition for rehearing the respondent suggests that the order of the trial court granting a new trial, and the notice of appeal therefrom, are not properly certified by the judge as required by section 953a of the Code of Civil Procedure. (*Drummond* v. *Drummond*, 39 Cal. App. (2d) 418, 422 [103 Pac. (2d) 217; 2 Cal. Jur. 607, sec. 329.) No motion to dismiss this appeal was made under rule V of the Rules for the Supreme Court and District Courts of Appeal, for the lack of a proper certificate of the judge, or at all. On examining the transcript on appeal it appears that the order granting a new trial, the notice of appeal, and all other pleadings and proceedings in the case were presented to the judge for settlement in one document attached to the reporter's transcript of the evidence, and that the judge certified on June 18, 1941, to the correctness of the 138 pages of

evidence adduced at the trial, and further certified to the proceedings attached thereto, including the order granting a new trial and the notice of appeal, in the following language:

"I further certify that the transcript is true and correct, and the same is hereby settled and allowed."

We assume the "transcript" which was certified by the judge, as required by section 953a of the Code of Civil Procedure, included everything attached to the document which was presented to him for the purpose of settling the same.

There is no merit in the suggestion that the proceedings which transpired subsequent to the entry of judgment are not properly certified by the judge.

The petition for rehearing is denied.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1942.