[Civ. No. 14563.   First Dist., Div. One.   Apr. 28, 1951.]

JOSEPH LUNNY, Plaintiff and Appellant, v. FRANK LABRUCHERIE, Defendant and Appellant; MARCO MASSELLA, Respondent.

Guy A. Ciocca for Appellants.

Freitas, Keating & Freitas for Respondent.

WOOD (Fred B.), J.—Defendant Labrucherie appeals from that portion of a judgment which decreed that plaintiff recover from Labrucherie $5,200 as damages for nondelivery of dairy cattle and equipment, and $350 for rental. Plaintiff appeals from the entire judgment, which, in addition to awarding plaintiff recovery of the $5,550 mentioned, denied him recovery of other items of damage which he claimed against both defendants. For the sake of convenience, we will refer to defendant Labrucherie as the appellant, and plaintiff Lunny as the respondent. The parties have so designated themselves in their briefs and have discussed defendant's appeal to the virtual exclusion of plaintiff's.

In September, 1947, negotiations between the parties resulted in the sale of his dairy business, livestock and equipment by appellant to respondent for $50,000, $15,000 payable in cash and the remainder in installments. By its terms appellant sold all the livestock and equipment described in an attached inventory, retaining title until payment of the purchase price in full. He agreed to supervise the operation of the ranch until all sums due him were fully paid, such operations to be conducted in a most economical and farmerlike manner so as to obtain the most efficient and profitable results, he to

consult with respondent "as required" and "to devote such time as is necessary to execute the purpose hereinabove set forth" but to receive no compensation for his services. He was to have "full authority to hire and discharge employees employed in the said dairy business" and to be "responsible for the safety and well-being of said dairy herd while the same is under his supervision and care." Particularly significant was the provision that appellant would "turn over the possession of said property on the 1st day of November, 1947," to respondent, "all income thereafter to be paid to" and "all operation expense to be paid by" respondent, and "the proceeds from the sale of calves, cows, equipment or any of the property herein mentioned and the proceeds received from the sale of livestock as the natural increase of the herd shall belong to and be paid to" respondent, coupled with the requirement that appellant make no "commitments for the sale of any of the property described herein or the purchase of any further property for the account of" respondent "without first having advised and consulted with and obtained the consent so to do" of respondent.

The fact that appellant delivered the livestock and equipment on November 1, 1947, pursuant to the agreement, is not questioned, and is not in issue. The complaint alleged, the answer admitted, and the court accordingly found that appellant and respondent executed the agreement on November 1, 1947, and on that day entered into the performance of the obligations respectively assumed by them pursuant to the agreement.

From November 1, 1947, until sometime in March, 1948, when his health failed him for a time, appellant was at the ranch nearly every day performing his work of supervision, going to the ranch in the morning and returning to his home at the end of the day. He spoke to respondent about his illness, and respondent told him to stay at home as long as he wanted and to go to the ranch whenever he felt like it. He was ill for three or four months, during which period he was at the ranch two or three times a week. It appears, also, that on November 1, 1947, with the express approval of appellant and as contemplated by the parties, respondent employed defendant Massella as ranch foreman to conduct dairy operations and farming operations at the ranch under the supervision and direction of appellant, who was to have full charge of the operation of the ranch.

On July 9, 1948, respondent paid appellant in full the remainder of the purchase price and accrued interest.

A few months later, respondent brought this action, alleging (1) that on or about July 1, 1948, respondent paid the remainder of the purchase price and appellant purportedly delivered the property described in the inventory, but that certain of the livestock and some of the personal property described in the inventory attached to the agreement of November 1, 1947, were missing, (2) that he had sustained damages as result of diminished proceeds from the sale of milk during the period November, 1947, to July, 1948, because of the missing dairy stock, (3) other items of damage because of alleged failure of appellant properly to perform his obligations as supervisor of dairy operations, and (4) overdue and unpaid rental in the sum of $350 for the month of October, 1947. The trial court found that respondent paid appellant the remainder of the purchase price on July 9, 1948; that appellant delivered to respondent physical custody, possession and control of the livestock and equipment, but that such delivery was short of the inventory listing in that there were missing 10 cows and 15 heifers valued at $200 each, and miscellaneous items of personal property of the aggregate value of $200; and that appellant was indebted to respondent for rent in the sum of $350 for October, 1947. The court found for the defendants and against the plaintiff in respect to all other items of damage alleged in the complaint.

The issues upon these appeals narrow down to (1) the legal responsibility, if any, of appellant for the alleged loss of dairy cattle and equipment during the period November 1, 1947, to July 9, 1948, and (2) the sufficiency of the evidence to sustain the finding of loss of dairy cattle during that period. The finding against respondent on the other items of damage is supported by substantial evidence and the finding in his favor as to rent due in the amount of $350 is supported by undisputed evidence.

In view of the facts pleaded and proved, we find no basis for holding appellant legally responsible to respondent for the livestock and equipment allegedly missing on July 9, 1948.

■ The agreement of November 1, 1947, was a conditional sales contract pursuant to which the goods were delivered to the buyer, the seller retaining legal title merely to secure performance by the buyer of his obligations under the contract. ■ In such a case the goods are at the risk of the

buyer from the time of such delivery. (Civ. Code, § 1742, subd. (a) ; *Beaudry* v. *Peterson,* 50 Cal.App.2d 478, 482-484 [123 P.2d 108].)

██ Legal responsibility for loss occurring after November 1, 1947, must be found, if at all, in those provisions of the agreement which conferred upon appellant certain supervisory functions over respondent's ranch operations. Those provisions certainly did not make appellant an insurer. ██ Liability, if any, must be predicated upon some willful or negligent act, or failure to act, which proximately caused the asserted loss. ██ None such was alleged or proven. The complaint pleaded merely a failure in July, 1948, to deliver all the property that the inventory called for in November, 1947. When on the witness stand, respondent was asked: "With reference to the thirty two milking cows which you claim are out of the string, the nineteen heifers, and the personal property which you claim is missing, do you know of your own knowledge that Mr. Labrucherie and Mr. Massella actually took any of those items?" he responded: "I have never made such a claim, that Mr. Labrucherie or Mr. Massella took them. I say they are missing. I am short an amount of cattle and equipment and milk proceeds." Appellant's attorney then asked respondent if he contended that defendants caused the cattle and personal property "to be taken for their own benefit by anyone else." Respondent's attorney objected, in these words: "I don't think that is within the scope of the case. The fact that they are missing—I don't think we have to account for them ourselves or——." Thereupon, appellant's attorney reframed the question, as follows: "Do you contend that either Mr. Labrucherie or Mr. Massella had anyone else, for their own benefit, take those items off the ranch." Respondent's attorney objected to this question "on the grounds it is incompetent, irrelevant and immaterial and not within the issues of the case." The court, in effect, sustained the objection, saying: "It has been answered, more or less. He has said what he knows about it, that the inventory showed a certain number of cattle, and the check at the end showed they were not there. No report of how they were missing, whether through death or being driven off or otherwise. He has no knowledge of it, he said. They were in there when he paid the money. That is his statement." Thus, it is clear that respondent tried the case consistently with the theory reflected by his complaint, a theory that appellant was under an obligation to account to respondent

(whenever the latter might pay the balance of the purchase price) for every item of property which appellant sold and delivered to respondent on the 1st of November, 1947, and if any such item were missing to exculpate himself by accounting for its loss (such as the sale of a cow and receipt by respondent of the sale price) or by paying respondent the money value of the lost item. That is not the obligation of a conditional seller who has delivered possession of the goods to the buyer. Nor is it an obligation that can be spelled out of any other portion of the agreement of November 1, 1947.

Respondent offers three reasons why the rule enunciated in *Beaudry* v. *Peterson, supra,* 50 Cal.App.2d 478, should not apply. First, he says this rule does not apply where the loss or destruction is caused by the fault of the seller. But, as we have seen, he neither pleaded nor proved fault of the seller in respect to the assertedly missing cattle and equipment.

As his second reason, he advances the theory that by the agreement of sale appellant "acquired supervision, control, and a measure of possession of the personal property and expressly assumed the risk of its loss or destruction." In support of that statement, respondent merely cites the agreement and section 1742 of the Civil Code, without analysis or discussion. We find in the agreement no assumption of any such obligation upon the part of appellant.

Respondent's third reason is that the agreement created a fiduciary relationship "which would charge appellant with the loss or destruction of the property even if he had not contractually assumed the risk thereof." He cites *Kinert* v. *Wright,* 81 Cal.App.2d 919 [185 P.2d 364]. In the Kinert case, the respondent had represented to appellants that he could purchase for them a certain parcel of land for $1,200, knowing he could get it for less. They engaged him as their agent and advanced the money. He purchased the desired property and an adjoining parcel for less than $1,200, and unsuccessfully sought to retain the balance of the money and the adjoining parcel for his own use. Obviously, that case bears no similarity whatsoever to the instant case.

In respect to the missing cattle, the court found that on July 9, 1948, the herd consisted of 220 milk cows, 26 bred heifers, 29 yearlings, and 35 calves. The inventory of November 1, 1947, listed 190 milk cows, 20 heifers in calf, 30 bred heifers, and 45 yearlings. In the interim, according to respondent's own testimony, four cows died, and four cows and two heifers were sold. During that period no animals

were purchased. Thus, it appears that a herd of 285 cows, heifers and yearlings in November (reduced by the four animals that died and the six which were sold) was a herd of 275 cows, heifers and yearlings in July, exclusive of the 35 calves which concededly were a natural increase. That evidence does not support a finding that 10 cows and 15 heifers, or any cows or heifers, delivered to respondent in November, were missing from the herd in July. Respondent seeks to justify the finding upon the theory that the 50 heifers which in November were with calf or had been bred should have calved and become milk cows, thus increasing the number of milk cows to 240 in July. He also contends that a considerable number of the animals that were yearlings in November would have become heifers, bred or with calf, by July. That is pure speculation, and calls for an increase in number from 275 to 300 (of cows, heifers and yearlings), without any increment from outside sources and without taking account of the four animals that died and the six that were sold, to sustain a putative loss of 25 cows and heifers. That, upon its face, is without support in the evidence. Besides, several experts testified that the condition of the herd in July, as to the numbers in the several classifications of animals, was a normal development for a herd such as this, over an eight or eight and a half months' period.

The judgment in favor of Massella is affirmed. On the appeal of Lunny and on the appeal of Labrucherie, the findings, conclusions and judgment are modified to provide that Lunny is entitled to recover from Labrucherie the sum of $350, with interest, and no more. As so modified, the judgment is affirmed, Labrucherie to recover his costs on these appeals.

Peters, P. J., and Bray, J., concurred.

Defendant and appellant's petition for a hearing by the Supreme Court was denied June 25, 1951. Carter, J., Traynor, J., and Schauer, J., voted for a hearing.