## ORR v. CLEGG LIVESTOCK CO., Inc.

No. 7658.   Decided June 14, 1951.   (232 P. 2d 752.)

See 55 C. J., Sales, sec. 1199. Conditional sales, destruction of property sold under. 47 Am. Jur., Sales, sec. 877; 38 A. L. R. 1319.

*M. Earl Marshall*, Tooele, for appellant.

*A. Pharis Johnson*, Tooele, for respondent.

WADE, Justice.

This suit was commenced by Dan T. Orr to recover the purchase price of 13 head of cattle sold to Clegg Livestock Company, Inc. under an agreement to purchase. The defendant counter-claimed for the value of feeding and tending the cattle. From a judgment in favor of the plaintiff, the defendant appeals. Hereafter, we shall refer to plaintiff as respondent, and defendant as appellant.

On January 5, 1949, respondent and appellant entered into a written agreement wherein respondent leased all his ranch and range property to appellant except a small log house in which he lived and two other small buildings near the log house. It was also agreed that respondent would sell to appellant all but 25 head of his cattle running on said property at $115.00 per head, the 1949 calves not to be counted. Pursuant to the terms of the agreement,

appellant paid $3000.00 at the time it was signed, this amount being credited as down payment of the total purchase price of the cattle. The balance of the purchase price was to be determined on or before May 15, 1949, at which time the cattle were to be gathered and counted and was to be paid in two equal installments, the first one on or before October 1949 and the second on or before October 1950, with interest at the rate of 4% per annum on the unpaid principal commencing from the 1st day of January, 1949. The title in the cattle was to remain in the seller until the purchase price had been fully paid and if the buyer desired to sell the cattle before such payment it had to obtain the written consent of the seller.

The 13 head of cattle which are the subject matter of this action died some time in February and March of 1949. Appellant claims that it is not obligated to pay for them because it was an executory contract of sale, the title remaining in seller until all the cattle had been gathered and counted, and therefore the parties intended the seller to assume the risk of loss. Respondent contends that the cattle were purchased under the terms of a conditional sales contract and that appellant had taken possession of the cattle thereunder upon the execution of the contract and therefore appellant was responsible for the loss or destruction of the property under the provisions of Section 81-2-6, U. C. A. 1943, even though the legal title had been retained by respondent to secure the debt. Section 81-2-6, U. C. A. 1943, so far as pertinent here, reads as follows:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not, except that:

"(1) Where delivery of the goods has been made to the buyer, or to bailee for the buyer, in pursuance of the contract, and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery."

In the trial of this case, Howard J. Clegg, appellant's president, who negotiated the contract, testified that the title retention provisions was inserted in the contract as security for the seller and to obviate the necessity of mortgaging the cattle. The record further discloses that soon after the agreement was signed, appellant took possesion of the lands under the lease and tended and fed the cattle thereon. The winter of 1949 was exceptionally hard and cold and some time during February and March, the 13 head of cattle died. Appellant skinned these cattle and kept the skins. At one time, appellant attempted to remove from the state some of the cattle it had bought under this agreement before they had been paid for but was prevented from doing so by respondent. At another time when it found it expedient to take care of the cattle at another ranch run by it, respondent removed some of these cattle to that place. Appellant ran other cattle besides those bought from respondent on the leased property which appellant sprayed but those sold by respondent were not sprayed because respondent refused appellant permission to do so.

The court as the trier of the facts found that appellant went into constructive possession of all the cattle on the leased lands at the time of entering into the written agreement and that it was intended by the parties to ▪ the agreement that appellant was to have that possession. The evidence we have outlined above is sufficient to sustain such a finding.

Appellant having taken possession of the cattle at the time the agreement was entered into and the title having been retained merely as security for the payment, it assumed the risk of loss under the provisions of Sec. 81-2-6, U. C. A. 1943. See *Beaudry* v. *Peterson,* 50 Cal. ▪ App. 2d 478, 123 P. 2d 108, 124 P. 2d 637, wherein the District Court of Appeal held that under a statute similar to Sec. 81-2-6, U. C. A. 1943, the buyer of machinery under a conditional sales contract who took possession of the property assumed the risk of loss. Having taken pos-

session, the burden of caring for the property fell upon the buyer.

Since the title to the property was only retained by respondent for security purposes and appellant took possession of the cattle, it was its duty, in the absence of an express agreement to the contrary, to feed ■ and tend the cattle and therefore the court did not err in so finding and refusing to grant appellant a judgment on its cross-complaint.

Affirmed. Costs to respondent.

WOLFE, C. J., and LATIMER, McDONOUGH and CROCKETT, JJ., concur.