PATROSSO, J.
Action upon a sight draft drawn in favor of plaintiff’s assignor, Berl Berry, Inc., by one F. H. Bradbury, purporting to act as agent for and in the name of the defendant, issued in payment for an automobile purchased from said assignor. The sole question is whether the trial court was warranted in concluding that Bradbury was not authorized to purchase and accept delivery of the automobile and to execute and deliver the draft upon behalf of the defendant.
Berl Berry, Inc., is a dealer in automobiles with its place of business in Kansas City, Missouri. Defendant is a physician having his office in Compton, California, and also was secretary of Bradbury Motor Corporation, of which Bradbury was president. Prior to the events with which we are here concerned, the defendant established an account with funds provided by him and in his own name in the Compton National Bank for the purpose of paying for automobiles to be purchased by Bradbury who alone was authorized to draw thereon. The defendant testified that the account was opened for the purpose of providing funds for the purchase of cars by Bradbury Motor Corporation but due to the fact that it was in financial difficulties the account previously mentioned was maintained in defendant’s individual name. Following this, Mr. Bradbury, by or with the consent and approval of defendant, was sent to the middle west for the *Supp. 931 purpose of purchasing automobiles, and at or about the same time as the purchase of the car from the plaintiff’s assignor for which the draft here in question was issued, he purchased some seven cars (including one other from plaintiff’s assignor) as agent for and in the name of defendant, for which he issued similar sight drafts in payment, which were honored by defendant upon presentation. Conformably to this practice, Bradbury purchased the Pontiac for which the draft in suit was issued from plaintiff’s assignor in the defendant’s name, and took delivery thereof, whereupon he (Bradbury) entrusted it to a person of his selection for the purpose of driving it to defendant’s home in Compton. The car, however, was stolen en route, but by whom does not appear. Upon being apprised by Bradbury of the purchase of the car in question, as in the case of seven others purchased by Bradbury, defendant procured insurance thereon in Ms name as the insured. Upon presentation of the draft defendant refused to accept the same, and defendant and plaintiff’s assignor thereupon agreed that the latter should undertake to locate and recover the automobile, and, if successful, sell the car and retain the proceeds without prejudice to any rights which assignor might have against defendant. The car was later recovered and sold by the assignor for a sum which, after deducting costs incurred, netted $207.79.
Plaintiff contends that the facts related above, if they do not establish actual authority in Bradbury to purchase cars for defendant and issue in payment thereof drafts upon the latter through the Compton National Bank are sufficient as a matter of law to establish that he was clothed with ostensible authority so to do, and, moreover, that when defendant, upon being notified by Bradbury of the purchase of the Pontiac, procured insurance thereon in his name as insured, he thereby ratified Bradbury’s actions in so doing. We are in accord with these contentions and accordingly are constrained to reverse the judgment.
The evidence to which we have adverted above leaves no doubt but that Bradbury was authorized by defendant to purchase automobiles in the latter’s name and to issue in payment thereof drafts in defendant’s name drawn upon the defendant through the Compton National Bank; that Bradbury, pursuant to such authorization, proceeded to purchase automobiles, taking title thereto in the name of defendant and issuing in payment thereof drafts drawn upon the *Supp. 932 defendant which were accepted by the latter. This, if it does not establish actual authority in Bradbury to bind defendant, establishes that he was clothed with ostensible authority so to do. ‘ ‘ Ostensible authority to do a particular act may be established by showing that the principal approved similar acts of the agent.” (2 Cal.Jur.2d p. 700, § 52.) Nor is it of consequence that defendant testified that he regarded Bradbury as agent of the corporation, or that he considered the account in the Compton National Bank, upon which Bradbury was authorized to draw, as a loan to the corporation. The fact that defendant entertained this secret or undisclosed intent does not relieve him from liability to those who, in good faith and in ignorance of any limitations or restrictions on the agent’s authority, dealt with him upon the basis of his apparent authority. (2 Cal.Jur.2d p. 701 § 53.)
Accepting as true defendant’s statement that the purpose of establishing the account in the name of defendant individually was to permit the corporation to purchase automobiles because of the financial difficulties in which it found itself, it would be a gross fraud upon those who in good faith sold automobiles in the belief that the defendant individually was the purchaser thereof to permit defendant to say after the automobiles were purchased in his name that such cars were in fact purchased for the corporation, for it is only reasonable to assume that under the circumstances they would have refused to do so upon the credit or promise of a financially embarrassed corporation. More important, however, is the fact that, whether the automobiles were purchased for the defendant or the corporation, according to defendant’s own testimony Bradbury was authorized to draw drafts on defendant in payment of such cars as he might purchase.
Additionally, as already noted, it appears from defendant’s own testimony that when advised by Bradbury that he had purchased the Pontiac automobile in question from the plaintiff’s assignor he proceeded to insure the same in his name as owner, thereby ratifying the act of Bradbury in so doing.
The defendant also contends that inasmuch as the car was stolen before its delivery to defendant and the draft was not accepted, title never passed to defendant, and the loss must therefore fall upon the plaintiff. We find no merit to this contention. As we have seen, the automobile was delivered to defendant’s agent, Bradbury, who in turn delivered possession thereof to a person, selected by him, to drive the same to Compton. Conceding, without deciding, that it was *Supp. 933 the intent of the seller (plaintiff’s assignor) that, despite the delivery of possession of the automobile to defendant’s agent, Bradbury, title thereto should not pass to defendant until the payment of the draft, the loss nevertheless falls upon the defendant. (Civ. Code, § 1742.) The authorities to the contrary cited by defendant were decided prior to the adoption by California, in 1931, of the Uniform Sales Act, of which section 1742 is a part, and as a consequence the rule formerly obtaining that loss of the subject matter of a sale, without fault of either party, falls upon the holder of the title thereto, no longer obtains. (Beaudry v. Peterson (1942), 50 Cal.App.2d 478, 482-484 [123 P.2d 108, 124 P.2d 637].) Moreover, here, as in the case last cited, defendant caused the automobile to be insured in his own name, and when the car was stolen, notified the insurance carrier thereof, thus indicating that he recognized the legal obligation imposed by the contract to protect himself against loss. (Beaudry v. Peterson, supra, p. 484.)
The judgment is reversed.
Bishop, P. J., and Swain, J., concurred.